916 P.2d 703

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Robert M. EDWARDS, Defendant–Appellant.**

No. 18223.

Supreme Court of Hawai'i.

May 10, 1996.

Kyle B. Coffman, on the briefs, Wailuku, Maui, for defendant-appellant Robert M. Edwards.

Victoria J. Hamilton, Deputy Prosecuting Attorney, on the briefs, Wailuku, Maui, for plaintiff-appellee State of Hawai'i.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

Defendant-appellant Robert M. Edwards appeals his convictions of murder in the second degree, robbery in the first degree, two counts of sexual assault in the first degree, kidnapping, and burglary in the first degree. On appeal, Edwards contends that: (1) the trial court abused its discretion by admitting into evidence photographs of the victim's body; and (2) he was rendered ineffective assistance of counsel. Based on our review of the record, we hold that: (1) the trial court did not abuse its discretion by admitting the photographs into evidence; and (2) Edwards did not receive ineffective assistance of counsel. We therefore affirm Edwards's convictions.

## I. BACKGROUND

During the evening hours of January 25, 1993 through the early morning hours of January 26, 1993, a sixty-seven-year-old woman (the decedent), suffered horrific indignities and fatal physical injuries as a result of being bound at her ankles and wrists, beaten, sexually assaulted, and robbed.

On February 5, 1993, in a six-count indictment, Edwards was charged with the following: (1) burglary in the first degree, in violation of Hawai'i Revised Statutes (HRS) § 708-810(1)(c) (1993);[1] (2) kidnapping, in violation of HRS § 707-720(1)(d) (1993);[2] (3) sexual assault in the first degree, in violation

---

1. HRS § 708-810 provides in relevant part:
   (1) A person commits the offense of burglary in the first degree if the person intentionally enters or remains unlawfully in a building, with intent to commit therein a crime against a person or against property rights, and:
   . . . .
   (c) The person recklessly disregards a risk that the building is the dwelling of another, and the building is such a dwelling.

2. HRS § 707-720(1)(d) provides in relevant part: "A person commits the offense of kidnapping if the person intentionally or knowingly restrains another person with intent to . . . [i]nflict bodily injury upon that person or subject that person to a sexual offense[.]"

of HRS § 707–730(1)(a) (1993);[3] (4) sexual assault in the first degree, in violation of HRS § 707–730(1)(a);[4] (5) robbery in the first degree, in violation of HRS § 708–840(1)(a) (1993);[5] and (6) murder in the second degree, in violation of HRS § 707–701.5 (1993).[6]

At trial, several photographs of the decedent's body were submitted by the prosecution and admitted into evidence by the court over Edwards's objections. Other evidence introduced by the prosecution and admitted into evidence included: (1) Edwards's palm print, made in the decedent's blood, which was recovered from the wall in the hallway of decedent's condominium; (2) Edwards's fingerprints, which were found in the decedent's condominium; (3) Edwards's right footprint, which matched a footprint impression made in the decedent's blood on a t-shirt found in the decedent's condominium; (4) results of DNA analysis of a glob of saliva found in the decedent's bathtub that matched Edwards's DNA; and (5) a pubic hair found on a pillow in the decedent's condominium that matched Edwards's pubic hair.

On March 10, 1994, a jury found Edwards guilty on all counts. On June 1, 1994, Edwards was sentenced to a term of imprisonment of twenty years on count one (burglary) and to separate terms of life imprisonment for counts two through six (kidnapping, two counts of sexual assault, robbery, and second degree murder), all terms to run consecutively. On June 30, 1994, Edwards filed a timely notice of appeal.

## II. *DISCUSSION*

On appeal, Edwards contends that:

[A] The [trial] court erred when it admitted into evidence and allowed to be published to the jury during trial photographs

depicting the dead and mutilated body of the [decedent]; [and]

[B] [Edwards] was denied his constitutional right to effective assistance of counsel.

A. *The trial court did not abuse its discretion by admitting into evidence photographs of the decedent's body.*

The trial court admitted into evidence—over Edwards's objection—the following photographs:

Exhibit 34: Photograph of victim on bed in relation to closet.

Exhibit 35: Close-up photograph of victim on bed in relation to closet.

Exhibit 36: Photograph of victim on bed in Apt. # 105.

Exhibit 37: Photograph of victim on bed in Apt. # 105.

Exhibit 38: Photograph of victim on bed showing injuries to vagina.

Exhibit 39: Close-up photograph of victim's vagina.

Exhibit 42: Close-up photograph of victim's chin showing incised wounds.

Exhibit 43: Close-up photograph of victim's face.

Exhibit 44: Photograph of overall view of victim's body after covers removed.

Exhibit 45: Photographs of victim's left ankle—ligature marks.

Exhibit 46: Photograph of victim's right ankle—ligature marks.

Exhibit 119: Morgue identification photograph of victim.

Exhibit 120: Morgue photograph showing injuries to victim's teeth.

Exhibit 121: Morgue photograph showing injuries to victim's teeth.

---

**3.** HRS § 707–730(1)(a) provides in relevant part: "A person commits the offense of sexual assault in the first degree if ... [t]he person knowingly subjects another person to an act of sexual penetration by strong compulsion[.]"

**4.** *See supra* note 3.

**5.** HRS § 708–840(1)(a) provides in pertinent part: "A person commits the offense of robbery in the first degree if, in the course of committing

theft[,] ... [t]he person attempts to kill another, or intentionally inflicts or attempts to inflict serious bodily injury upon another[.]"

**6.** HRS § 707–701.5(1) provides that "[e]xcept as provided in section 707–701, a person commits the offense of murder in the second degree if the person intentionally or knowingly causes the death of another person."

Exhibit 122: Morgue photograph showing injuries to victim's nose.

Exhibit 123: Morgue photograph showing injuries to victim's neck.

Exhibit 124: Morgue photograph showing injuries to victim's neck.

Exhibit 125: Morgue photograph showing incised wound·on victim's neck.

Exhibit 128: Close-up photograph showing incised wound on victim's chest.

Exhibit 130: Close-up photograph of victim's crushed left nipple.

Exhibit 132: Close-up photograph of victim's crushed right nipple.

Exhibit 135: Photograph showing ligature marks on victim's right wrist.

Exhibit 136: Photograph of injuries and ligature marks on victim's left hand and wrist.

Exhibit 137: Photograph of injuries on victim's left middle finger.

Exhibit 138: Photograph of injuries on victim's right middle finger.

Exhibit 140: Photograph of injuries to victim's right knee.

All of the aforementioned photographs were in color, enlarged to eight inches by twelve inches, and may be classified into four categories: (1) photographs of the decedent's limbs (Exhibits 45, 46, 135, 136, 137, 138, 140); (2) photographs of the decedent's sexual parts (Exhibits 38, 39, 130, 132); (3) photographs of the decedent's face (Exhibits 43, 119, 120, 121, 122, 123, 124, 125); and (4) photographs of the decedent's entire nude body (Exhibits 34, 35, 36, 37, 44).

The admission or rejection of photographs is a matter within the discretion of the trial court; consequently, unless there is a showing of an abuse of discretion, the trial court's ruling will not be disturbed on appeal. *See State v. Klafta*, 73 Haw. 109, 115, 831 P.2d 512, 516 (1992) (finding no abuse of discretion in the admission into evidence of photographs of the victim); *State v. Ahlo*, 2 Haw.App. 462, 467, 634 P.2d 421, 425 (1981) (commenting that, "[because] the State has the burden of establishing its case and all the elements thereof beyond a reasonable doubt, [appellate courts] are not disposed to second guess the trial judge, who saw and heard all of the evidence, in determining how far the State should be permitted to go in the area of photographs of the victim's body"), *cert. denied*, 456 U.S. 981, 102 S.Ct. 2252, 72 L.Ed.2d 858 (1982); Charles E. Torcia, *Wharton's Criminal Evidence* § 600 at 591 (1987) ("Whether a photograph is admissible is a question for the trial judge in his [or her] discretion to resolve, and his [or her] ruling will not be disturbed unless there has been a clear abuse of such discretion."). "The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant." *State v. Furutani*, 76 Hawai'i 172, 179, 873 P.2d 51, 58 (1994) (citations omitted).

Relying on Hawai'i Rules of Evidence (HRE) Rule 403 (1993),[7] Edwards contends on appeal that the trial court abused its discretion by admitting the photographs of the decedent into evidence because the probative value of the photographs was substantially outweighed by their possible prejudicial effect. We disagree.

We have previously stated that "the determination of the admissibility of relevant evidence under HRE 403 is eminently suited to the trial court's exercise of its discretion because it requires a 'cost-benefit calculus' and a 'delicate balance between probative value and prejudicial effect[.]'" *Sato v. Tawata*, 79 Hawai'i 14, 19, 897 P.2d 941, 946 (1995) (citing *Kealoha v. County of Hawai'i*, 74 Haw. 308, 315, 844 P.2d 670, 674 (quoting *Kaeo v. Davis*, 68 Haw. 447, 454–55, 719 P.2d 387, 392 (1986)), *reconsideration denied*, 74 Haw. 650, 847 P.2d 263 (1993)). We have also stated that, "[i]n weighing probative value versus prejudicial effect . . .[,] a variety of matters must be considered, including . . . the need for the evidence, the efficacy of alternative proof, and the degree to which

---

7.  HRE Rule 403 provides that

    [a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

the evidence probably will rouse the jury to overmastering hostility." *State v. Renon*, 73 Haw. 23, 38, 828 P.2d 1266, 1273 (1992) (citing *State v. Castro*, 69 Haw. 633, 644, 756 P.2d 1033, 1041 (1988) (quoting E.W. Cleary, *McCormick on Evidence* § 190, at 565 (3d ed. 1984) (footnote omitted)).

Edwards contends that each photograph of the decedent's body lacked probative value because, "[i]n this case, [the fact] that the deceased was murdered and brutalized in an animalistic manner was not disputed.... The only real issue at trial was the identity of the culprit." Preliminarily, we note that, at trial, Edwards's counsel declined to make an opening statement to the jury, and, at the close of the prosecution's case-in-chief, the defense rested, without presenting any evidence. Edwards's "defense," was therefore confined to cross-examination of the prosecution's witnesses and the arguments made by his counsel during closing argument to the jury.

Defense counsel's closing argument indicates that Edwards's defense rested on the question of identity. In other words, Edwards did not dispute that the crimes charged were committed against the decedent. Rather, Edwards maintained that the prosecution failed to prove beyond a reasonable doubt that Edwards was the person who committed the acts in question. Specifically, defense counsel stated:

> I'm not going to say the defendant was not in [the decedent's apartment on the night of the murder]. I'm not going to insult your intelligence.... I think the State has proven based upon th[e] evidence that he was in there.
>
> ....
>
> [But t]he State ... also ha[s] to prove that he committed the murder, that he committed the sexual assault.

Edwards's "concession," however, that the decedent was "murdered and brutalized in an animalistic manner" has no bearing upon the admission of the photographs at issue in this appeal. *See, e.g., Smallwood v. State*, 907 P.2d 217, 228 (Okl.Crim.App.1995) ("Appellant's willingness to concede that there is no dispute over the identity of victim or the

injuries sustained is not determinative of the photographs' admissibility.").

■ "One of the most fundamental principles of the common law is that the occurrence of a crime must be proved before anyone can be convicted of the offense. The establishment of this *corpus delicti*, the body of the offense, is an essential element of the state's case." *State v. Dudoit*, 55 Haw. 1, 2, 514 P.2d 373, 374 (1973). "Pictures of the murder victim are always probative in establishing the *corpus delicti* of the crime." *Williamson v. State*, 812 P.2d 384, 400 (Okl. Crim.App.1991); *Territory v. Joaquin*, 39 Haw. 221, 230 (1952) ("Photographs of a homicide victim which depict the fatal wounds or indicate the manner of death are admissible for purpose of identifying the victim; and this rule's observance is not affected by the fact that there is no actual dispute as to the identity of the deceased." (Citations omitted.)). Photographs of murder victims "can show the nature, extent and location of wounds, ... corroborate testimony of medical examiners and expert witnesses and depict the crime scene." *Smallwood*, 907 P.2d at 228 (citations omitted).

■ In this case, for instance, the photographs of the ligature marks on the decedent's wrists and ankles corroborate the coroner's testimony that the decedent was bound by her assailant, rendering those photographs probative of the kidnapping charge. Similarly, and for obvious reasons, the photographs of the injuries to decedent's face, sexual parts, and her entire body are probative of the charges of murder, robbery, and sexual assault. Thus, notwithstanding Edwards's position that the photographs lacked probative value because "[t]he only real issue at trial was the identity of the culprit," we hold that the photographs were relevant and probative.

The question then narrows to whether "the probative value [of the photographs was] substantially outweighed by the danger of *unfair* prejudice." HRE 403 (emphasis added). The commentary to HRE 403 explains that " '[u]nfair prejudice' ... means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." We therefore ex-

amine each of the photographs admitted into evidence by the trial court.

### 1. Photographs of the Decedent's Limbs (Exhibits 45, 46, 135–138, and 140)

■ The photographs of the decedent's limbs show the bruises and scratches to the decedent's wrists, hands, fingers, ankles, and knee, each depicting a different injury. The photographs are not needlessly cumulative, nor can they be considered unfairly prejudicial. Thus, we hold that the photographs of the decedent's limbs (Exhibits 45, 46, 135–138, and 140) were properly admitted.

### 2. Photographs of the Decedent's Sexual Parts (Exhibits 38, 39, 130, and 132)

■ The photographs of the decedent's sexual parts include photographs of her breasts (Exhibits 130 and 132) and her vagina (Exhibits 38 and 39). Exhibits 130 and 132 depict bruising and scratching to the right and left nipple of decedent's breast. The photographs are not needlessly cumulative, nor unfairly prejudicial.

■ We acknowledge that the photographs of the decedent's vagina may be considered gruesome and that the possibility of prejudice exists. However,

> [t]he possibility of prejudice is in itself insignificant; it is the danger of prejudice substantially outweighing the probative value of the proffered evidence that is determinative. Otherwise,
>
>> [i]f the mere gruesomeness of the evidence were ground for its exclusion, then it would have to be said that the more gruesome the crime, the greater the difficulty of the prosecution in proving its case.

1 J. Weinstein, M. Berger, & J. McLaughlin, *Weinstein's Evidence* ¶ 403[5], at 403–77 to 403–78 (1995) (quoting *Rivers v. United States*, 270 F.2d 435, 438 (9th Cir.1959), *cert. denied*, 362 U.S. 920, 80 S.Ct. 674, 4 L.Ed.2d 740 (1960)). In other words, the fact that a photograph may be considered gruesome does not necessarily render the photograph inadmissible. *See e.g., State v. Molina*, 47 Haw. 391, 390 P.2d 132 (1964) (Although photograph showing the head of the deceased

with a twelve-centimeter sutured incision from a craniectomy may be inherently gruesome or shocking, it is admissible if it aids or clarifies the testimony of a medical witness.). The inescapable reality is that "[g]ruesome crimes result in gruesome pictures." *McCormick v. State*, 845 P.2d 896, 898 (Okl.Crim. App.1993).

Each photograph depicts injuries not visible in the other and are, thus, not cumulative. We therefore hold that the trial court did not abuse its discretion in admitting the photographs of the decedent's sexual parts.

### 3. Photographs of the Decedent's Face (Exhibits 42, 43, 119, and 120–125)

■ The photographs of the decedent's face show that the decedent suffered numerous blows to the head area. The photographs depict the injuries inflicted to the decedent's: (i) face (Exhibits 42, 43, and 119); (ii) neck (Exhibits 122, 123, 124, and 125); and (iii) teeth (Exhibits 120 and 121). Each photograph depicts injuries not visible in any other photograph. Again, based on our review of the photographs at issue, some of which are admittedly gruesome, we do not believe the photographs were unfairly prejudicial. Although we are concerned about the number of photographs of the decedent's face that were admitted into evidence, we do not believe that the trial court abused its discretion in allowing them because the photographs were not needlessly cumulative. Consequently, we hold that the photographs of the decedent's face were properly admitted.

### 4. Photographs of the Decedent's Entire Nude Body (Exhibits 34, 35, 36, 37, and 44)

■ The photographs of the decedent's entire nude body demonstrate the overall severity of the injuries to the decedent. As previously stated, this was a gruesome crime; thus, the photographs of the decedent's nude body are likewise gruesome, but not unfairly prejudicial. Again, although we are concerned about the number of photographs of the decedent's body that were admitted into evidence, we cannot say that the trial court abused its discretion in admitting them.

Each photograph was taken from a different angle, depicting different injuries. Thus, we hold that the trial court did not abuse its discretion by admitting photographs of the decedent's nude body into evidence.

### B. Edwards was not denied effective assistance of counsel.

When an ineffective assistance of counsel claim is raised, the question is: "When viewed as a whole, was the assistance provided to the defendant 'within the range of competence demanded of attorneys in criminal cases?'" Additionally,

> the defendant has the burden of establishing ineffective assistance of counsel and must meet the following two-part test: 1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense.

State v. Silva, 75 Haw. 419, 439–440, 864 P.2d 583, 593 (1993) (citations and brackets omitted). On appeal, Edwards essentially contends that he was rendered ineffective assistance of counsel because his attorney failed to object to certain testimony of two witnesses: (1) the decedent's daughter; and (2) Maui Police Department Detective Lenie Lawrence.

### 1. Testimony of the Decedent's Daughter

According to Edwards, "the daughter of the deceased ... gave a detailed and moving account that personalized the deceased i[n] a sympathetic light, giving a romantic and pleasant picture of the deceased's life and the interactions of the deceased with her own immediate family." The decedent's daughter testified that her mother was: (1) a seasonal resident of Maui; (2) usually a resident of Alaska; (3) a real estate agent; and (4) for the five years preceding her death, a widow. The daughter also recounted her mother's activities on January 25, 1993. According to the daughter, on that date, the decedent had played golf; on the way home, she stopped at a store to buy a box of macadamia nuts for a friend.

Edwards argues that the daughter's testimony was objectionable because it "was in stark and striking juxtaposition with the testimony of ... the detectives and the pathologist as to the gruesome, gory and senseless end to this romantic, idyllic life," making the jury prone to convict him in order to avenge the death of the "romanticized" victim. We fail to see how playing golf and buying a box of macadamia nuts for a friend portrays a "romantic" and "idyllic" life. Moreover, regardless of the characterization of the decedent's activities, the evidence was relevant to show that she was alive on January 25, 1993.

Moreover, Edwards has failed to establish [8] how defense counsel's failure to object to the daughter's testimony evinced counsel's "lack of skill, judgment, or diligence," Silva, 75 Haw. at 440, 864 P.2d at 593, nor how such alleged failure led to "the withdrawal or substantial impairment of a potentially meritorious defense." Id. We therefore hold that this argument is without merit.

### 2. Detective Lawrence's Testimony

Edwards also argues that his counsel should have objected to testimony of Maui Police Department Detective Lawrence [9] that implied that Edwards had a criminal record. At trial, Detective Lawrence explained how Edwards was eventually identified as a suspect:

Q. [By the Prosecutor] [O]n [February 1, 1993,] did your investigation focus on anyone else [other than the original suspect(s) ]?

A. [By Detective Lawrence] On ... 2–1–93, I was contacted by Detective Bell on [sic] the morning. And he had informed me that they were working on a suspect who was possibly named Rob or Robert.

---

**8.** We note that Edwards's argument in his opening brief with respect to his claim of ineffective assistance of counsel is presented in less than two pages, without citation to any authority.

**9.** Edwards mistakenly identifies Detective Funes as the detective who "testified that [Edwards] had already had an arrest record in the County of Maui."

Q. Are you aware of whether or not the suspect was ever identified fully?

A. Yes, he was.

Q. Now, after he was—this person Rob or Robert was identified, what happened next?

A. I went over to the records section of our police department to determine if he had any arrests or record in the County of Maui, and I was able to find some fingerprint cards on file for him.

Edwards contends that his counsel's failure to object to Detective Lawrence's fingerprint card testimony amounted to ineffective assistance of counsel because the reference to "fingerprint cards" apprised the jury that Edwards had, at the very least, an arrest record. Edwards argues that, with such a "revelation," the jury must have concluded: "Why not go ahead and convict [Edwards] . . . ? Someone ha[s] to be punished. Even if he did not commit these crimes, he [is] still a criminal, he [is] entitled to be treated as such."

We agree that Detective Lawrence's reference to "fingerprint cards" may have suggested to the jury that Edwards had a crimi-nal record and that defense counsel's failure to object to such reference reflected a "lack of skill, judgment, or diligence[.]" *Silva*, 75 Haw. at 440, 864 P.2d at 593. Nevertheless, given the overwhelming nature of the evidence linking Edwards to the crimes charged, we do not believe that counsel's failure to object "resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." *Id.*

### III. *CONCLUSION*

For the reasons discussed above, we hold that: (1) the trial court did not abuse its discretion by admitting into evidence photographs of the decedent's body; and (2) Edwards did not receive ineffective assistance of counsel. We therefore affirm Edwards's convictions.