34 P.3d 1039

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Sayyaphone Noy KEOMANY, also known as Xayyaphone Keomany, also known as Noy, Defendant–Appellant.**

No. 22006.

Intermediate Court of Appeals of Hawai'i.

June 5, 2000.

Certiorari Granted July 7, 2000.

Certiorari Dismissed as Improvidently Granted Nov. 29, 2001.

Earle A. Partington (Partington & Foley) on the briefs, Honolulu, for defendant-appellant.

1. HRS § 707–730(1)(a) (1993) provides:
 1) A person commits the offense of sexual assault in the first degree if:
 (a) The person knowingly subjects another person to an act of sexual penetration by strong compulsion[.]

2. HRS § 707–732(1)(e) (1993) provides:
 (1) A person commits the offense of sexual assault in the third degree if:
 . . . .
 (e) The person knowingly, by strong compulsion, has sexual contact with another person or causes another person to have sexual contact with the actor[.]

Loren J. Thomas, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for plaintiff-appellee.

BURNS, C.J., WATANABE and LIM, JJ.

Opinion of the Court by LIM, J.

On March 20, 1997, the Oahu grand jury indicted Defendant–Appellant Sayyaphone Noy Keomany, also known as Xayyaphone Keomany, also known as Noy (Defendant) on the following counts: three counts of sexual assault in the first degree (Counts 1, 3 and 4), in violation of Hawai'i Revised Statutes (HRS) § 707–730(1)(a) (1993);[1] two counts of sexual assault in the third degree (Counts 2 and 5), in violation of HRS § 707–732(1)(e) (1993);[2] and two counts of kidnapping (Counts 6 and 7), in violation of HRS § 707–720(1)(d) (1993).[3]

Following a jury trial in the circuit court of the first circuit, the jury found Defendant guilty in Counts 1 through 6, and not guilty in Count 7. A Judgment; Guilty Conviction and Sentence was entered on September 29, 1998. An Amended Judgment; Guilty Conviction and Sentence was entered on December 1, 1998.[4]

Defendant now brings this appeal, contending he received ineffective assistance of counsel when his trial attorney (1) failed to object to erroneous jury instructions, (2) failed to request a bill of particulars, and (3) failed to correct an erroneous statement in the pre-sentence report.

Defendant also contends, upon the same underlying grounds, that the trial court committed plain, reversible error in (1) giving erroneous jury instructions, (2) failing to

3. HRS § 707–720(1)(d) (1993) provides:
 (1) A person commits the offense of kidnapping if the person intentionally or knowingly restrains another person with intent to:
 . . . .
 (d) Inflict bodily injury upon that person or subject that person to a sexual offense[.]

4. The original Judgment; Guilty Conviction and Sentence incorrectly switched Count 4 (sexual assault in the first degree) with Count 5 (sexual assault in the third degree).

specify for the jury which sexual assault count applied to which alleged act, and (3) failing to order, *sua sponte*, correction of the pre-sentence report.

We affirm for the following reasons.

## BACKGROUND.

At trial, Chaweewan Iamwong (Complainant) testified that she was working as a bartender and sometime hostess in the Club Pataya (a karaoke hostess bar) in Kalihi.

Complainant described her relationship with Defendant, a regular customer, as a "business relationship"; i.e., she would ask him to buy her a drink in order to make money, and she would talk and sometimes sing karaoke songs with him.

On the evening of the alleged offenses, Defendant called Complainant at the bar and told her he was coming over. He arrived at the bar around 10:00 or 10:30 p.m. with his brother and a friend. Complainant sat with Defendant at his booth drinking cranberry juice with vodka, while he drank beer. After buying Complainant two drinks, Defendant left the bar.

Half an hour later Defendant telephoned again. Complainant asked him to return to the bar, hoping to make more money. He returned alone around midnight. She sat with him, and he bought her another drink. When Defendant ran out of money, Complainant drove him to an automatic teller machine so he could make a withdrawal.

Later that evening, Complainant agreed to give Defendant a ride home. Defendant, who implied to Complainant that he had bought a new house in the Kailua area, directed her to take the Pali Highway. At some point, he told Complainant to stop the car on the side of the road, and she complied. She was unfamiliar with the area.

As Complainant said goodbye, Defendant tried to kiss her on the lips, but she turned away. He asked her why she turned away and when she did not reply, Defendant repeatedly punched her in the face, causing black eyes and a bleeding mouth. When she asked him why he was doing this to her, he ordered her to turn off the engine and car lights and began to choke her.

He then dragged her by her neck and shoulder out of the car to a shed on some farmland. In the shed, Complainant repeatedly asked Defendant why he was doing this to her, and pleaded with him not to kill her. Defendant said he wanted sex, and was upset that she was leaving to visit her family in Thailand.

When Complainant screamed, Defendant ordered her not to scream and repeatedly punched and choked her. Complainant testified that she feared he would kill her unless she did whatever he wanted, so she removed her panties and told him to go ahead.

Defendant removed all of his clothing and inserted his penis in Complainant's vagina. Defendant also placed his hand on her breast.

After a couple of minutes, Complainant lied that she had to relieve herself outside. Once outside the shed, she started to run towards her car, but kept falling down in the mud. Defendant caught her and inserted his penis in her vagina again. When she complained that her back hurt on the ground and asked to return to the shed, he dragged her back to the shed.

Complainant testified that she thought Defendant hit her again in the shed. She again pleaded with him not to kill her. Defendant again inserted his penis into Complainant's vagina and touched her breast.

At one point during the assault, Complainant told Defendant she was a prostitute, hoping he might think she was "dirty" and stop.

After Defendant ejaculated, Complainant drove him back across the Pali and dropped him off in Kalihi, as he instructed.

Complainant testified that as she was driving Defendant home, she drove at around eighty miles per hour, hoping the police would pull her over. She also testified that she invited Defendant to her house, thinking she could then call the police with the help of her live-in boyfriend and his friend, who were home at the time. Defendant initially agreed to go to Complainant's house, but changed his mind and told her to drop him off in Kalihi.

After dropping Defendant off, Complainant immediately drove to the Kalihi police station and reported what had happened to her. She was later taken to the hospital by ambulance.

Defendant testified that he had met Complainant one or two months before the night of the alleged assaults, and that she was a friend. He bought her drinks, they hugged; he thought she liked him. She made him feel "good and happy."

He testified that on the night in question, Complainant told him she was returning to Thailand and that she wanted to sleep with him before she left. When the bar closed, they left to go to Waimanalo to sleep together. Defendant testified that he neither forced nor restrained her.

At the farm, they hugged and kissed, and walked hand-in-hand to the shed. As they did so, Complainant slipped and fell on the wet ground. They both laughed as Defendant helped her up. Inside the shed, they engaged in consensual sexual intercourse and he touched her breast. Defendant testified that Complainant hugged him and never said "no."

After the sexual intercourse, Complainant told him that she was a prostitute and wanted money, but he had none. Defendant felt bad because he felt he meant nothing to her.

Complainant repeatedly asked for Defendant's gold necklace. She then tried to take the necklace from around his neck, at which point Defendant pushed her, slapped her three or four times with his hand, and punched her in the face.

Defendant then calmed down and apologized to her, and she drove him home to Kalihi.

## STANDARDS OF REVIEW.

### 1. JURY INSTRUCTIONS.

 "When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." *Arceo*, 84 Hawai'i at 11, 928 P.2d at 853 (citations and internal quotation marks omitted); *see also State v. Kupau*, 76 Hawai'i 387, 393,

879 P.2d 492, 498 (1994). If the instructions requested by the parties are inaccurate or incomplete but are necessary "in order for the jury to 'have a clear and correct understanding of what it is that they are to decide[,]'" then the trial court has the duty either to correct any defects or to fashion its own instructions. *State v. Okumura*, 78 Hawai'i 383, 411, 894 P.2d 80, 108 (1995) (citations omitted); *accord State v. Kinnane*, 79 Hawai'i 46, 50, 897 P.2d 973, 977 (1995).

Nevertheless, the "trial court is not required to instruct the jury in the exact words of the applicable statute but to present the jury with an understandable instruction that aids the jury in applying that law to the facts of the case." *State v. Apao*, 59 Haw. 625, 645, 586 P.2d 250, 263 (1978), *subsequent resolution*, 66 Haw. 682, 693 P.2d 405 (1984). Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial. *State v. Robinson*, 82 Hawai'i 304, 310, 922 P.2d 358, 364 (1996). If that standard is met, however, "the fact that a particular instruction or isolated paragraph may be objectionable, as inaccurate or misleading, will not constitute grounds for reversal." *Pinero*, 75 Haw. at 292, 859 P.2d at 1374. Whether a jury instruction accurately sets forth the relevant law is a question that this court reviews *de novo. Richardson v. Sport Shinko (Waikiki Corp.)*, 76 Hawai'i 494, 504, 880 P.2d 169, 179 (1994).

*State v. Sawyer*, 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998).

[E]rror is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error might have contributed to conviction. If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside.

*State v. Cullen,* 86 Hawai'i 1, 8, 946 P.2d 955, 962 (1997) (internal quotation marks and citations omitted).

■ A lower court has substantial latitude in tailoring jury instructions provided they fairly and adequately cover the issues presented. *United States v. Soulard,* 730 F.2d 1292, 1303 (9th Cir.1984); *accord State v. Nuetzel,* 61 Haw. 531, 551, 606 P.2d 920, 932 (1980) (held [t]rial courts should not be restricted to merely repeating the terms of the statute); *accord State v. Nakamura,* 65 Haw. 74, 79, 648 P.2d 183, 187 (1982) (held instructions should not merely parrot the language of the statute).

### 2. PLAIN ERROR.

■ "We may recognize plain error when the error committed affects substantial rights of the defendant." *Cullen,* 86 Hawai'i at 8, 946 P.2d at 962 (internal quotation marks and citations omitted).

### 3. INEFFECTIVE ASSISTANCE OF COUNSEL.

■ In considering a defendant's claim of ineffective assistance of counsel, we employ the analysis adopted by the Hawai'i Supreme Court:

This court has long held that when an ineffective assistance of counsel claim is raised, the question is: "When viewed as a whole, was the assistance provided to the defendant within the range of competence demanded of attorneys in criminal cases?" *State v. Edwards,* 81 Hawai'i 293, 300, 916 P.2d 703, 710 (1996). This court has also held that

the defendant has the burden of establishing ineffective assistance of counsel and must meet the following two-part test: 1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense.

*Id.* (quoting *State v. Silva,* 75 Haw. 419, 439–40, 864 P.2d 583, 593 (1993)). "Determining whether a defense is 'potentially meritorious' requires an evaluation of the possible, rather than the probable, effect of the defense on the decision maker . . . .

Accordingly, no showing of 'actual' prejudice is required to prove ineffective assistance of counsel." *Dan v. State,* 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994). *State v. Fukusaku,* 85 Hawai'i 462, 479–80, 946 P.2d 32, 49–50 (1997).

### DISCUSSION.

### 1. ELEMENTS INSTRUCTIONS FOR SEXUAL ASSAULT IN THE FIRST DEGREE (Counts 1, 3 & 4) AND THIRD DEGREE (Counts 2 & 5).

■ Defendant contends that the trial court committed plain, reversible error in giving the following jury instructions, and that his trial counsel was ineffective in failing to object to their rendition:

[Court's Instruction Nos. 27, 28 & 29]

In Count [I, III and IV, respectively] of the Indictment, the [Defendant] is charged with the offense of Sexual Assault in the First Degree.

A person commits the offense of Sexual Assault in the First Degree if he knowingly subjects another person to an act of sexual penetration by strong compulsion.

There are four material elements to this offense, each of which the prosecution must prove beyond a reasonable doubt. These four elements are:

1. That on or about March 16, 1997, in the City and County of Honolulu, State Of Hawaii, the [Defendant] subjected [Complainant] to an act of sexual penetration by inserting his penis into her vagina; and

2. That the Defendant did so by strong compulsion; and

3. That the Defendant did so knowingly; and

4. That the Complainant did not consent.

[Court's Instruction Nos. 32 & 33]

In Count [II and V, respectively] of the Indictment, the [Defendant] is charged with the offense of Sexual Assault in the Third Degree.

A person commits the offense of Sexual Assault in the Third Degree if he knowingly, by strong compulsion, has sexual contact with another person, who is not his

spouse, or causes such person to have sexual contact with the actor.

There are five material elements to this offense, each of which the prosecution must prove beyond a reasonable doubt. These five elements are:

1. That on or about March 16, 1997, in the City and County of Honolulu, State of Hawaii, the [Defendant] had sexual contact with [Complainant] by placing his hand on her breast; and

2. That the Defendant did so by strong compulsion; and

3. That the Defendant did so knowingly; and

4. That at the time of the offense [Complainant] was not married to the Defendant; and

5. That the Complainant did not consent.

Defendant maintains that the foregoing instructions were erroneous. Specifically, Defendant contends they were prejudicially insufficient because they inadequately informed the jury that the specified state of mind, "knowingly," applied to each element of each offense, pursuant to HRS § 702–207 (1993). HRS § 702–207 provides:

When the definition of an offense specifies the state of mind sufficient for the commission of that offense, without distinguishing among the elements thereof, the specified state of mind shall apply to all elements of the offense, unless a contrary purpose plainly appears.

In addition, HRS § 701–114 (1993) provides, in pertinent part, that:

[N]o person may be convicted of an offense unless the following are proved beyond a reasonable doubt:

(a) Each element of the offense;

(b) The state of mind required to establish each element of the offense[.]

Defendant explains that the listing of certain elements *after* the specified state of mind left those elements textually unmodified by the applicable state of mind, and thus erroneously implied to the jury that the state of mind did not apply to those elements.

As is evident from the quoted instructions, *supra*, in the elements instructions for the three counts of sexual assault in the first

degree and the two counts of sexual assault in the third degree, the lack of consent element was stated after the applicable state of mind. In addition, in the elements instructions for the two counts of sexual assault in the third degree, the absence of marriage element was also subsequently stated.

■ Defendant did not object to the instructions at trial and therefore alleges plain error on appeal. An appellate court may recognize plain error when the error committed affects substantial rights of the defendant. *Cullen*, 86 Hawai'i at 8, 946 P.2d at 962.

Defendant's arguments are, however, without merit in that they do not show predicate error.

■ Due process prohibits conviction of a defendant unless the jury finds that all facts constituting the offense have been proved beyond a reasonable doubt. *State v. Iosefa*, 77 Hawai'i 177, 182, 880 P.2d 1224, 1229 (1994). HRS § 702–205 (1993) defines the elements of an offense as follows:

The elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as:

(a) Are specified by the definition of the offense, and

(b) Negative a defense (other than a defense based on the statute of limitations, lack of venue, or lack of jurisdiction).

HRS § 707–730(1)(a) provides that a person commits the offense of sexual assault in the first degree if "[t]he person knowingly subjects another person to an act of sexual penetration by strong compulsion[.]"

Hence, as stated by the trial court, the elements of sexual assault in the first degree to which the state of mind applied, pursuant to HRS §§ 702–205 and 702–207, are that Defendant (1) placed his penis (conduct) (2) in Complainant's vagina (result of conduct) (3) by strong compulsion and therefore, as discussed *infra*, without her consent (attendant circumstance).

HRS § 707–732(1)(e) provides that a person commits the offense of sexual assault in the third degree if "[t]he person knowingly,

by strong compulsion, has sexual contact with another person or causes another person to have sexual contact with the actor[.]"

Accordingly, as stated by the trial ·court, the elements of sexual assault in the third degree to which the state of mind applied, pursuant to HRS §§ 702–205 and 702–207, are that Defendant (1) placed his hand (conduct) (2) on Complainant's breast (result of conduct) (3) by strong compulsion and therefore without her consent (attendant circumstance) and, as implied by the term "sexual contact" discussed *infra*, (4) while not married to her (attendant circumstance).

Defendant's argument is, therefore, that the state of mind "knowingly," by virtue of its placement in the elements instructions, failed to modify the attendant circumstances of lack of consent and, where applicable, absence of marriage, as required by HRS §§ 702–207 and 701–114.

The definition of "knowingly" depends, however, upon the kind of element that is being modified. HRS § 702–206(2) (1993) defines the state of mind "knowingly" as follows:

(2) "Knowingly."

(a) A person acts knowingly with respect to his conduct when he is aware that his conduct is of that nature.

(b) A person acts knowingly with respect to attendant circumstances when he is aware that such circumstances exist.

(c) A person acts knowingly with respect to a result of his conduct when he is aware that it is practically certain that his conduct will cause such a result.

In other words, Defendant acted knowingly with respect to the relevant attendant circumstances if, with respect to the sexual assault charges of both degrees, he was aware Complainant did not consent, and also if, with respect to the sexual assault in the third degree charges, he was aware he was not married to the Complainant.

Although the attendant circumstances of lack of consent and absence of marriage were elements listed after the specification of the applicable state of mind, and hence were arguably left textually unmodified by it in the elements instructions, that fact alone does not render the jury instructions erroneous.

"When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, *when read and considered as a whole*, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." *Sawyer*, 88 Hawai'i at 330, 966 P.2d at 642 (internal quotation marks and citations omitted) (emphasis added).

Reading and considering the jury instructions as a whole, we first observe that the trial court's Instruction No. 16 did instruct the jury, verbatim from HRS § 702–206(2), that:

A person acts knowingly with respect to his conduct when he is aware that his conduct is of that nature.

*A person acts knowingly with respect to attendant circumstances when he is aware that such circumstances exist.*

A person acts knowingly with respect to a result of his conduct when he is aware that it is practically certain that his conduct will cause such a result.

(Emphasis added).

In addition, the trial court instructed the jury on the defense of consent in Instruction Nos. 24 and 40, as follows:

Court's Instruction No. 24

In any prosecution, the complaining witness' consent to the conduct alleged or to the result thereof, is a defense if the consent negatives an element of the offense or precludes the infliction of the harm or evil sought to be prevented by the law defining the offense.

Consent is not a defense if it is induced by force, duress, or deception. As to all counts, the burden is upon the prosecution to prove beyond a reasonable doubt that the complaining witness did not consent to the conduct alleged or the result thereof. If the prosecution fails to meet its burden, then you must find the defendant not guilty.

[Court's Instruction No. 40]

Consent can be either explicit or implicit. Express consent is positive, direct, unequivocal, requiring no inference or implication to supply its meaning.

Implicit consent is consent that is manifested by signs, actions, or facts, or by inaction or silence, which raise a presumption that consent had been given.

Given these supplemental instructions, the jury instructions, read and considered as a whole, ensured that the order of the elements instructions did not mislead the jury into relieving the State of its burden of proving that the Defendant was aware of the elemental attendant circumstances.

Instruction No. 16 provided a definition of the state of mind "knowingly," which applied to each generic element of a criminal offense; i.e., conduct, attendant circumstances and result of conduct. Hence even if we assume that the elements instructions failed to apply the state of mind to the specific attendant circumstances of lack of consent and absence of marriage, Instruction No. 16 nevertheless defined "knowingly," with respect to attendant circumstances, as the state of mind of the Defendant in which he was indeed aware of the attendant circumstances.

Moreover, with respect to the attendant circumstance of lack of consent, the instructions defining "consent," particularly Instruction No. 40, contained in and of themselves the knowledge element because they required that consent be explicitly or implicitly communicated to the Defendant.

This means that if the State failed to disprove Complainant's consent, then that consent, by definition, was explicitly or implicitly communicated to the Defendant, such that he must have had the requisite awareness of it. By the same token, if the State proved Complainant's lack of consent, there was no communication of that consent in any way and the Defendant was therefore aware of its absence.

Consent, by definition, subsumes awareness by a defendant and can stand alone with respect to the applicable state of mind.

Though the modifier "did so knowingly" was not textually applied to the element of lack of consent, the desideratum of applying that state of mind to that element was nonetheless communicated to the jury.

As a final point with respect to the attendant circumstance of lack of consent, we observe that the elements instructions required a finding that the Defendant acted by "strong compulsion."

We also observe that, unlike the other attendant circumstances of lack of consent and absence of marriage, this element was textually modified by the applicable state of mind, "knowingly."

The trial court's Instruction No. 31 defined this element, verbatim from the pertinent provisions of HRS § 707–700 (1993), as follows:

[Court's Instruction No. 31]

"Strong compulsion" means the use of or attempt to use one or more of the following to overcome a person:

1. A threat, express or implied, that places a person in fear of bodily injury to the individual or another person, or in fear that the person or another person will be kidnapped; or

2. Physical force.

By their very definitions, strong compulsion and consent are mutually exclusive, for the consent instructions stated that "[c]onsent is not a defense if it is induced by force, duress, or deception." Hence a jury finding of strong compulsion precludes a concomitant finding of consent. *See State v. Lira*, 70 Haw. 23, 27–31, 759 P.2d 869, 872–74 (1988); *State v. Suka*, 70 Haw. 472, 478–79, 777 P.2d 240, 243–44 (1989).[5]

Under this formulation, if the jury found that Defendant acted by strong compulsion, it necessarily also found that Complainant did not consent. If she did not consent, then by definition consent was not communicated either implicitly or explicitly, and thus Defendant was aware it was absent.

If the jury found, furthermore and pursuant to the elements instructions, that Defen-

**5.** *Cf. People v. Roberts*, 182 Ill.App.3d 313, 130 Ill.Dec. 751, 537 N.E.2d 1080, 1083 (1989) (in a criminal sexual assault case in which a consent instruction was given, the court stated that

"[c]onsent is the very antithesis of force. Where the State proves defendant used force, it necessarily proves the victim did not consent[ ]").

dant knowingly acted by strong compulsion, it necessarily also found that Defendant was aware Complainant did not consent.

■ Defendant cites *Suka, supra,* to support his subsidiary argument that separating lack of consent from strong compulsion in the elements instructions conveyed the misconception that they are separate and distinct concepts. Defendant incorrectly applies *Suka* to this case.

In *Suka,* the trial court instructed the jury on "forcible compulsion" but did not instruct the jury on the defense of consent. The Hawai'i Supreme Court found that the definition of "forcible compulsion" given to the jury was worded in a way that "does not make the mutual exclusion of consent and forcible compulsion obvious. Only the giving of a consent instruction will ensure that the defense of consent is not compromised."[6] *Id.* at 478, 777 P.2d at 244.

The jury in this case was, however, given a consent instruction, thereby eliminating the potential for confusion.

Finally, with respect to the circumstance of absence of marriage attendant to the two sexual assault in the third degree charges, we observe that the trial court instructed the jury that:

A person commits the offense of Sexual Assault in the Third Degree if he knowingly, by strong compulsion, has *sexual contact* with another person, *who is not his spouse,* or causes such person to have sexual contact with the actor.

. . . .

"*Sexual contact*" means any touching of the sexual or other intimate parts of a person *not married to the actor,* or of the sexual or other intimate parts of the actor by the person, whether directly or through the clothing or other material intended to cover the sexual or other intimate parts."

HRS §§ 707–732(1)(e) & 707–700 (emphases added).

Because the enumerated elements of sexual assault in the third degree did apply the state of mind "knowingly" to the element of sexual contact, and because "sexual contact" by definition subsumes the attendant circumstance of absence of marriage, the jury was adequately instructed to apply the requisite state of mind to that attendant circumstance. Too, the instructions expressly informed the jury that a person commits the offense of sexual assault in the third degree if he knowingly has sexual contact with a person "who is not his spouse."

To summarize with respect to the elements instructions for the sexual assault counts, the placement of the elemental attendant circumstances after the state of mind in the enumerated elements was not error.[7] When read and considered as a whole, the instructions adequately informed the jury of the prosecution's burden to prove that Complainant did not consent to the acts alleged and was not married to the Defendant at the time, and that Defendant was aware of both circumstances when he acted.[8]

**6.** In *Suka,* the statute in effect at the time of the incident used the phrase "forcible compulsion" instead of "strong compulsion," but the definition of the former is identical to the definition of the latter. *State v. Suka,* 70 Haw. 472, 478 n. 4, 777 P.2d 240, 244 n. 4 (1989).

**7.** *Cf. Chambers v. People,* 682 P.2d 1173, 1179 (Colo.1984) (failure of trial court to instruct jury specifically that defendant must have been aware of victim's nonconsent, in prosecution for first-degree sexual assault, was not plain error, where instruction directed jury's attention to resulting nonconsensual submission of the victim to sexual penetration rather than to the separate circumstance of nonconsent, in view of the fact that jury could not reasonably have found the defendant knowingly effected the results of his conduct without an awareness of the attendant conduct and circumstances); *People v. Derrera,* 667 P.2d 1363, 1366–69 (Colo.1983) (instruction limited to

defining "knowingly" as an awareness by the defendant that his conduct is practically certain to cause the result necessarily requires the jury to be satisfied beyond a reasonable doubt that the defendant was also aware that his conduct was of a particular nature and that certain circumstances existed, so that the failure to specifically instruct on the conduct and circumstances components of the mental state "knowingly" was not plain error in defendant's trial for attempted robbery and attempted second-degree sexual assault).

**8.** We observe that it was unnecessary in the first instance for the trial court to include lack of consent as a material element of the offenses. *State v. Horswill,* 75 Haw. 152, 159–60, 857 P.2d 579, 583 (1993) (if a separate consent instruction is given, lack of consent need not be included as a material element of sexual assault).

While the jury instructions on the sexual assaults were by no means exemplary, Defendant has failed to show that as a whole they were prejudicially insufficient, erroneous, inconsistent or misleading. There being no error, defendant's contention that the trial court committed plain error in rendering the jury instructions must fail, as must his argument that his trial counsel was ineffective in failing to object to the instructions.

### 2. ELEMENTS INSTRUCTION FOR KIDNAPPING (Count 6).

■ Defendant asserts the same arguments with respect to the trial court's Instruction No. 36, on the material elements of the kidnapping charge, which read as follows:

### [Court's Instruction No. 36]

In Count VI of the Indictment, the [Defendant] is charged with the offense of Kidnapping.

A person commits the offense of Kidnapping if he intentionally or knowingly restrains another person with intent to inflict bodily injury upon that person or subject that person to a sexual offense.

There are four material elements of the offense of Kidnapping, each of which the prosecution must prove beyond a reasonable doubt.

These four elements are:

1. That on or about March 16, 1997, in the City and County of Honolulu, State of Hawai'i, the [Defendant] restrained [Complainant]; and

2. That the Defendant did so intentionally or knowingly; and

3. That the Defendant did so with intent to inflict bodily injury upon [Complainant] or to subject her to a sexual offense; and

4. That the Complainant did not consent.

Defendant again contends the instructions failed to adequately inform the jury that the specified state ·of mind, in this instance "intentionally or knowingly," applied to each and every element of the offense; specifically, the element of lack of consent enumerated after the specified state of mind.

When we read and consider the jury instructions as a whole, in particular the "in-

tentionally" (instruction 15), "knowingly" (instruction 16) and consent (instructions 24 and 40) instructions, we again and for much the same reasons conclude that the instructions were not erroneous.

Instruction No. 15 defined the state of mind "intentionally," verbatim from HRS § 702–206(1), as follows:

### Court's Instruction No. 15

A person acts intentionally with respect to his conduct when it is his conscious object to engage in such conduct.

*A person acts intentionally with respect to attendant circumstances when he is aware of the existence of such circumstances or believes or hopes that they exist.*

A person acts intentionally with respect to a result of his conduct when it is his conscious object to cause such a result.

(Emphasis added).

This instruction, in conjunction with Instruction No. 16, informed the jury that the specified state of mind, "intentionally or knowingly," means that the Defendant had to be aware of the attendant circumstances, including lack of consent, as explained *supra*.

In addition, the instructions (24 and 40) on consent explained the State's burden to prove that the Complainant did not consent to the conduct alleged or the result thereof. As also previously discussed, the very definition of consent married the lack of consent to the Defendant's awareness of it.

Finally, we observe that the elements instructions on the kidnapping charge required a finding that Defendant "restrained" the Complainant. We also observe they textually modified this element by the applicable state of mind, "intentionally or knowingly."

The trial court's Instruction No. 38 defined this element as follows:

### [Court's Instruction No. 38]

"Restrain" means to restrict a person's movement in such a manner as to interfere substantially with his liberty by means of force, threat, or deception.

Instruction No. 38 was taken verbatim from the pertinent provisions of HRS § 707–700 that define "restrain."

By their very definitions, restraint and consent are mutually exclusive, for the consent instructions stated that "[c]onsent is not a defense if it is induced by force, duress, or deception." As we reasoned previously with respect to the antithetical relationship between strong compulsion and consent, a jury finding of restraint extrudes a finding of consent. *Cf. Lira*, 70 Haw. at 27–31, 759 P.2d at 872–74; *Suka*, 70 Haw. at 478–79, 777 P.2d at 243–44; *People v. Roberts*, 182 Ill. App.3d 313, 130 Ill.Dec. 751, 537 N.E.2d 1080, 1082–83 (1989).

It follows that if the jury found that Defendant restrained the Complainant, it necessarily also found that she did not consent. If she did not consent, then by definition consent was not communicated either implicitly or explicitly to the Defendant and he was *ipso facto* aware of its absence. If the jury found, furthermore and pursuant to the elements instructions, that Defendant intentionally or knowingly restrained Complainant, it necessarily also found that he knew she did not consent.

Here again, we recognize that the jury instructions were by no means exemplary. Nonetheless, in this instance Defendant has again failed to show that the jury instructions as a whole were prejudicially insufficient, erroneous, inconsistent or misleading. There being no error, Defendant's contention that the trial court committed plain error in issuing the elements instructions must also fail, along with his argument that his trial counsel was ineffective in failing to object to the instructions.

### 3. JURY INSTRUCTIONS ON SEPARATE AND DISTINCT INTENTS.

Defendant also challenges the trial court's Instruction No. 25, which read as follows:

#### Court's Instruction No. 25

Whether a course of conduct gives rise to more than one crime depends in part on the intent and objective of the defendant. The test to determine whether the defendant intended to commit more than one offense is whether the evidence discloses one general intent or discloses separate and distinct intents. Where there is one intention, one general impulse, and one plan, there is but one offense.

The burden is on the prosecution to prove beyond a reasonable doubt that the defendant had separate and distinct intents to commit separate and distinct offenses.

Thus, if you find the defendant guilty of Count I [sexual assault in the first degree], you must not find him guilty of Count II [sexual assault in the third degree] unless you find that the prosecution has proven beyond a reasonable doubt that the defendant had a separate and distinct intent to commit Count II.

Also, if you find the defendant guilty of Count IV [sexual assault in the first degree], you must not find the defendant guilty of Count V [sexual assault in the third degree] unless the prosecution has proven beyond a reasonable doubt that defendant had a distinct and separate intent to commit Count V.

Finally, you may find the defendant guilty of both [kidnapping] Counts VI and VII only if you find that the prosecution has proven beyond a reasonable doubt that the defendant had separate and distinct intents to commit both Counts VI and VII.

 Defendant contends Instruction No. 25 was prejudicially misleading. Defendant argues that

[t]his instruction is erroneous for two reasons. First, the instruction told the jury that to convict [Defendant] of both Sexual Assault in the First Degree and Sexual Assault in the Third Degree it had to find separate and distinct intents, but then defined that intent as the same for both degrees of sexual assault (i.e., "knowingly"). For all the jury knew, if it found that the intent for both degrees of sexual assault was "knowingly," that in and of itself was sufficient to convict [Defendant] of both degrees of sexual assault. Second, the instruction failed to identify to the jury the *separate* and *distinct acts* which the jury had to find to convict for each Sexual Assault in the First Degree count and each

Sexual Assault in the Third Degree count. Trial defense counsel's failure to request (1) a bill of particulars for the sexual assault counts, (2) instructions informing the jury that the separate and distinct intents necessary to convict of both degrees of sexual assault did not mean "knowingly" for one degree and a different intent (such as "intentionally") for the other degree, and (3) instructions setting forth the separate and distinct acts the jury would have to find to convict [Defendant] of each Sexual Assault in the First degree count and each Sexual Assault in the Third Degree count constitute ineffective assistance of counsel. The trial court's failure to correctly instruct the jury on these points constituted plain reversible error.

(Footnote omitted).

Defendant's arguments founder for the following reasons.

First, his assertion that the instruction would preoccupy the jury with the *mens rea* element to the exclusion of the other elements of the offenses is, in our view, a speculative reach too far to seriously suggest error. The same goes for his contention that the instruction's reference to separate and distinct intents would send the jury on a futile and erroneous search for a state of mind other than the single one applicable ("knowingly").

█ Regarding Defendant's general plaint that the instruction was confusing, the record reveals that Counts 1, 3, and 4 (sexual assault in the first degree), and Counts 2 and 5 (sexual assault in the third degree), were each supported by evidence of an act separate and distinct from the acts charged in the other counts. *See State v. Horswill,* 75 Haw. 152, 161–63, 857 P.2d 579, 584–85 (1993).[9]

█ The Hawai'i Supreme Court has held that sexual assault in the first and third degrees are not continuing offenses; thus each separate and distinct act in violation of the governing statutes constitutes a separate

offense. *Arceo,* 84 Hawai'i at 21–23, 928 P.2d at 863–64. Defendant was therefore properly charged under separate counts for the separate offenses, and the trial court was required to instruct the jury on each of the separate counts.

The court's instructions, quoted in preceding sections of this opinion, enumerated the elements of the sexual assault offenses. The instructions on sexual assault in the first degree clearly and explicitly described the act of sexual penetration as the insertion of Defendant's penis into Complainant's vagina. The instructions on sexual assault in the third degree also unambiguously described the act of sexual contact, as the placing of Defendant's hand on Complainant's breast.

Instruction No. 25 further informed the jury that in order to find Defendant guilty under a count, he must have had a separate and distinct intent unique to that count. The instruction served to protect the rights of the Defendant by ensuring that he was not convicted for multiple offenses if he had the intent to commit only one offense. *See, e.g., State v. Hoey,* 77 Hawai'i 17, 37–39, 881 P.2d 504, 524–26 (1994).

Defendant's arguments regarding the clarity of Instruction No. 25 might be well taken if the instruction had been given in isolation. It was given, however, as part of an entire set of instructions. Read and considered as a whole, they were clear and understandable, and not erroneous. At any rate, any jury confusion regarding the requirement of separate and distinct intents could only have inured to Defendant's benefit.

As for the two kidnapping charges, the prosecuting attorney conceded at trial that the kidnapping offense in Count 7 merged with that in Count 6. Accordingly, the jury found Defendant not guilty of Count 7. Hence even if there was error in this particular respect, Defendant was not prejudiced.

9. [W]here two different criminal acts are at issue, supported by different factual evidence, even though separated in time by only a few seconds, one offense by definition cannot be included in the other.... Thus, it is possible for a defendant in the context of one criminal transaction to commit several acts independently violative of one or more statutes, and he or she may be punished for all of them if charges are properly consolidated by the prosecution in one trial.
*State v. Horswill,* 75 Haw. 152, 161–63, 857 P.2d 579, 584 (1993) (citations omitted).

■ Defendant also claims that a bill of particulars was necessary to show which count applied to which act. Defendant fails, however, to show why a bill of particulars was apropos.

■ A bill of particulars is "designed 'to enable the defendant to prepare for trial and prevent surprise[.]' " *State v. Reed,* 77 Hawai'i 72, 78, 881 P.2d 1218, 1224 (1994) (quoting *State v. Harper,* 1 Haw.App. 481, 486, 620 P.2d 1087, 1091 (1980)) (citation omitted). Defendant does not assert that he failed to receive adequate notice of the specific charges. He does not claim prejudicial surprise or an inability to prepare to meet the charges by virtue of insufficient notice. *See id.*

There was, moreover, no need to specify, in advance of trial or in the jury instructions, the separate and distinct act in question in each sexual assault count. The pretrial record and the evidence at trial each clearly and unambiguously shows that there were precisely three possible separate and distinct acts of sexual penetration for the three sexual assault in the first degree counts, and precisely two possible separate and distinct acts of sexual contact for the two sexual assault in the third degree counts. *See Horswill,* 75 Haw. at 156–59, 857 P.2d at 582–83 (where the trial court instructed the jury on two separate counts and the evidence showed two separate acts clearly accounting for the two separate counts, further specification in the jury instructions was not required).

This case is distinguishable from *Arceo, supra,* in which there were more discrete acts than counts. By the same token, any argument that the trial court should have given a unanimity instruction must fail. *See State of Hawai'i v. Justin Valentine,* 93 Hawai'i 199, 208, 998 P.2d 479, 488 (Haw.2000).

The trial court's Instruction No. 25, when read and considered in conjunction with the jury instructions as a whole, was not prejudicially insufficient, erroneous, inconsistent or misleading. It cannot, therefore, support a point of plain error or of ineffective assistance of counsel.

## 4. INCORRECT NOTATION IN THE PRE–SENTENCE REPORT.

■ For his last point on appeal, Defendant contends that the Pre-sentence Diagnosis and Report (aka PSI—pre-sentence investigation), which identified the kidnapping conviction in Count 6 as a conviction of a Class A felony, should have been amended to reflect that Defendant was instead convicted of kidnapping as a Class B felony.

Defendant argues that defense counsel's failure to request appropriate amendment of the PSI and the trial court's failure to amend the PSI *sua sponte* amounted to ineffective assistance of counsel and plain error, respectively.

Defendant fears that the inaccurate notation will adversely affect his custodial classification, programming, transfer and release, if it is relied upon by the Division of Corrections and the Hawai'i Paroling Authority.

At the sentencing hearing held on September 29, 1998, however, the trial judge orally clarified the record, noting that Defendant was indeed found guilty of kidnapping as a Class B felony. Moreover, Defendant or his attorney can appear at all subsequent hearings and submit whatever clarifying information is needed.

Defendant fails to show how the oversight affected his substantial rights, or how it may have resulted in substantial impairment of a potentially meritorious defense, so as to constitute plain error or ineffective assistance of counsel. To the extent that Defendant argues on this basis for vacating the judgment, his argument lacks merit.

However, as the Hawai'i Supreme Court has implied that the trial court may amend a PSI, *State v. Nobriga,* 56 Haw. 75, 80, 527 P.2d 1269, 1272–73 (1974), to avoid future misunderstandings the PSI should be corrected to reflect that Defendant was convicted of kidnapping as a Class B felony. *See also State v. Lessary,* 83 Hawai'i 280, 284–85, 925 P.2d 1104, 1108–09 (1996).

### CONCLUSION.

In light of the foregoing, the December 1, 1998 Amended Judgment; Guilty Conviction

and Sentence is affirmed, but the case is remanded to the trial court for the sole purpose of correction of the PSI to accurately reflect that Defendant was convicted under Count 6 of kidnapping as a Class B felony.

## Concurring Opinion of WATANABE, J.

I concur with the Majority that the trial court did not commit plain, reversible error when it instructed the jury as to the elements of sexual assault in the first degree (Counts 1, 3, and 4), sexual assault in the third degree (Counts 2 and 5), and kidnapping (Count 6).

However, I am troubled by the ramifications of the Majority's conclusion that there was "no need to specify, in advance of trial or in the jury instructions, the separate and distinct act in question in each sexual assault count" that Defendant was charged with. In my opinion, Defendant was entitled to know the specific conduct underlying each sexual assault count so that he could adequately prepare for trial.

The record reveals that the trial court did not give the jurors a specific unanimity instruction that all twelve of them had to agree, for each count Defendant was charged with, that the same underlying criminal conduct had to be proved beyond a reasonable doubt. Additionally, during closing arguments, the deputy prosecutor for the State confused the acts underlying each sexual assault count or mixed up the counts.[1] There-

fore, it is impossible for us to determine on appeal what specific conduct formed the basis for each sexual assault count Defendant was convicted of.

I realize that the Hawai'i Supreme Court recently held that a unanimity instruction is only necessary where "(1) at trial, the prosecution adduces proof of two or more separate and distinct culpable acts; and (2) the prosecution seeks to submit to the jury that only one offense was committed[,]" *State v. Valentine,* 93 Hawai'i 199, 208, 998 P.2d 479, 488 (2000), and in this case, the complainant testified to three sexual penetrations and two grabs of her breast, which accounts for all of the sexual assault counts that Defendant was charged with. Moreover, since the jury returned guilty verdicts as to all of the sexual assault counts, any error caused by individual jurors considering different instances of culpable conduct for each count is probably harmless.

If the jury had acquitted Defendant or reached an impasse on a particular count, however, we would never know whether the jurors had unanimously determined guilt as to the other counts based on the same underlying conduct, unless the counts had been particularized for the jury or a unanimity instruction had been given. I believe that a bill of particulars, a more specific indictment, or a unanimity instruction would have been advisable in this case because such measures would have ensured that each juror voted to

1. The record indicates that during closing argument, the deputy prosecutor initially identified Count 1 as sexual assault in the first degree and identified the underlying act as Defendant's inserting his penis into the complainant's vagina, using strong compulsion, and without consent. The deputy prosecutor identified the underlying conduct for Count 2, which charged sexual assault in the third degree, as grabbing the complainant's breast with strong compulsion and without consent. The deputy prosecutor identified Count 3 as sexual assault in the first degree, but did not discuss the act underlying the count. At this point, the deputy prosecutor either became confused or misspoke. He recapped Count 1 as sex in the shed after Defendant had dragged the complainant from the car. He then described Count 1 as the sexual penetration that occurred when the complainant tried to run away and Defendant tackled her and inserted his penis while the complainant was on the ground. Next, the deputy prosecutor misidentified Count 2 as sexual assault in the first degree, describing

penetration that occurred after Defendant had dragged the complainant back to the shed. The deputy prosecutor then described Count 3 simply as "Hand on breast. Sexual Assault in the third degree." He then erroneously described Count 4 as Defendant grabbing the complainant's breast the first time they were having sex in the shed, which would constitute sexual assault in the third degree, when, in fact, Count 4 charged Defendant with sexual assault in the first degree. Finally, the deputy prosecutor described Count 5 as Defendant's grabbing the complainant's breast after Defendant had dragged the complainant back again.

On rebuttal, the deputy prosecutor incorrectly identified Counts 1, 3, and 5 (rather than Counts 1, 3, and 4) as charging Defendant with sexual penetration with strong compulsion and without consent. The deputy prosecutor also referred to Counts 2 and 4 (rather than Counts 2 and 5) as charging Defendant with sexual contact, hand on breast, without consent and with strong compulsion.

convict Defendant on the basis of the same instances of sexual misconduct.