992 P.2d 718

STATE of Hawai'i, Plaintiff–Appellant,

v.

Keith K. VALENZONA, Defendant–
Appellee.

No. 22122.

Intermediate Court of Appeals of Hawai'i.

Dec. 15, 1999.

As Amended Dec. 17, 1999.

Certiorari Denied Jan. 24, 2000.

Alexa D.M. Fujise, On the briefs, for plaintiff-appellant.

Earle A. Partington (Partington & Foley), On the briefs, for defendant-appellee.

WATANABE, ACOBA and LIM, JJ.

Opinion of the Court by LIM, J.

Plaintiff–Appellant State of Hawai'i appeals the family court of the first circuit's November 16, 1998 Order of Dismissal, which dismissed with prejudice the complaint charging Defendant–Appellee Keith K. Valenzona with the crime of violation of an order for protection. We affirm.

On September 29, 1998, the State filed a complaint against Mr. Valenzona charging him with the criminal offense of violation of an order for protection:

> On or about September 25, 1998, in the City and County of Honolulu, State of Hawaii, KEITH K. VALENZONA did intentionally or knowingly violate the Order for Protection issued in FC–DA No. 97–1347 on October 14, 1997 by the Honorable Darry (sic) Y.C. Choy, Judge of the Family Court of the First Circuit, State of Hawaii, pursuant to Chapter 586 of the *Hawaii Revised Statutes*, thereby committing the offense of Violation of an Order for Protection in violation of Section 586–5.5 and Section 586–11 of the *Hawaii Revised Statutes*.

The family court issued the protective order to prevent domestic abuse or a recurrence of abuse, pursuant to Hawai'i Revised Statutes (HRS) § 586–5.5 (Supp.1997).[1]

---

1. Hawai'i Revised Statutes (HRS) § 586–5.5    (Supp.1997) provided, in pertinent part:

HRS § 586–11 (1993) imposes criminal sanctions for violation of a HRS § 586–5.5 protective order. HRS § 586–11 provides, in pertinent part:

Whenever an order for protection is granted pursuant to this chapter, a respondent or person to be restrained who knowingly or intentionally violates the order for protection is guilty of a misdemeanor.

Kathleen K. Valenzona requested the protective order in this case, which prohibited Mr. Valenzona from

any and all contact, direct or indirect, including but not limited to oral, written and electronic (pager, telephone, voice mail, recorded message, e-mail) communication, including communication through third parties with the Plaintiff [Ms. Valenzona] and any minor children residing in the household at home, school or care provider. This includes visiting and/or remaining within three (3) blocks of the place of residence, school and/or employment of the Plaintiff and within 100 feet of the Plaintiff at all other (neutral) locations. In the event the parties happen upon each other at a neutral location, the subsequent arriving party shall leave immediately or stay at least 100 feet from the other. When the parties happen upon each other at the same time at a neutral location, the Defendant [Mr. Valenzona] shall leave immediately or stay at least 100 feet from the Plaintiff.

The protective order further provided, however, that "Defendant may have LIMITED contact with Plaintiff by telephone/in person for the purpose of visitation." (Emphasis in the original.)

The protective order placed the couple's minor children in the temporary legal and physical custody of Ms. Valenzona, and allowed Mr. Valenzona visitation "[e]very other weekend from Friday 6:30 pm to Sunday 6:00 pm commencing October 24, 1997. Plaintiff or a mutual third party shall transfer the minors."

In response to Mr. Valenzona's request and motion for a bill of particulars,[2] and over opposition from the State, the family court ordered the State to file a bill of particulars setting forth:

(a) If after hearing all relevant evidence, the court finds that the respondent has failed to show cause why the order should not be continued and that a protective order is necessary to prevent domestic abuse or a recurrence of abuse, the court may order that a protective order be issued for such further period as the court deems appropriate, not to exceed three years from the date the protective order is granted.

The protective order may include all orders stated in the temporary restraining order and may provide for further relief as the court deems necessary to prevent domestic abuse or a recurrence of abuse, including orders establishing temporary visitation and custody with regard to minor children of the parties and orders to either or both parties to participate in treatment or counseling services. If the court finds that the party meets the requirements under section 334–59(a)(2), the court may further order that the party be taken to the nearest facility for emergency examination and treatment.

**2.** HRS § 806–47 (1993) provides:

If the court is of the opinion that the accused in any criminal case has been actually misled and prejudiced in the accused's defense upon the merits of any defect, imperfection, or omission in the indictment, insufficient to warrant the quashing of the indictment, or by any variance, not fatal, between the allegations and the proof, the prosecuting officer shall, when so ordered by the court, acting upon its own motion or upon motion of the prosecution or defendant, file in court and serve upon the defendant, upon such terms as the court imposes, a bill of particulars of the matters in regard to which the court finds that the defendant should be informed.

In determining whether further information, and if so what information, is desirable for the defense of the accused upon the merits of the case, the court shall consider the whole record of the case and the entire course of the proceedings against the accused.

Hawai'i Rules of Penal Procedure (HRPP) Rule 7 provides, in pertinent part:

(a) Use of Indictment, Complaint or Oral Charge. The charge against a defendant is an indictment, a complaint or an oral charge filed in court. A felony shall be prosecuted by an indictment or a complaint. Any other offense may be prosecuted by an indictment, a complaint, or an oral charge.

. . . .

(g) Bill of Particulars. The court may direct the filing of a bill of particulars. A motion for a bill of particulars may be made before arraignment or within 10 days after arraignment or at such other later time as the court may permit. A bill of particulars may be amended at any time subject to such conditions as justice requires.

1. The facts which the State claims, if proved, will establish that the charged offense was committed.
2. The specific sections contained in the Order for Protection that the State alleges Defendant violated.

The bill of particulars filed by the State read as follows:

1. On October 14, 1997, the Honorable Darryl Y.C. Choy, Judge of the Family Court of the First Circuit, granted Kathleen K. Valenzona's (hereinafter "Ms. Valenzona") Petition for Family Court Restraining Order in FC–DA No. 97–1347 (hereinafter "Restraining Order").
2. The Restraining Order is valid until 10–14–2001.
3. Keith K. Valenzona (hereinafter "Defendant") is the defendant in the Restraining Order.
4. Anthony Sagun personally served Defendant with a copy of the Restraining Order on October 25, 1997.
5. On or about September 25, 1998 Defendant appeared at Ms. Valenzona's residence on ..., which is located on the island of Oahu and argued with Ms. Valenzona about visitation with their children.
6. Defendant's visitation schedule permits visitation every other weekend, Restraining Order Section C(5), and Defendant had visitation with his children the weekend immediately preceding September 25, 1998.
7. Defendant had called Ms. Valenzona in the evening on September 24, 1998 regarding visitation and paged Ms. Valenzona several times on the morning of September 25, 1998 beginning at approximately 6:00 a.m.
8. Defendant violated Section B(1) of the Restraining Order which prohibits Defendant from all contact with Ms. Valenzona. The exception provided for contact regarding visitation is a limited exception which does not apply in this case under these circumstances.

At the November 16, 1998 trial call, the family court dismissed the charge against Mr. Valenzona with prejudice. The record does not reflect a written or oral motion to dismiss by Mr. Valenzona, but the tenor of the colloquy at the trial call indicates the dismissal was at his behest, and not by the court *sua sponte:*

MR. YOUNG: Good morning, Your Honor. Deputy prosecuting attorney Dean Young on behalf of the State.

MR. PARTINGTON: Good morning, Your Honor. Earle Partington for the defendant, who is present in custody.

THE COURT: Good morning. We had discussed this case in the back and, let's see, the particulars were filed; is that correct?

MR. PARTINGTON: That's correct, Your Honor.

THE COURT: All right. You know, I actually don't have a copy of the particulars. May I just see a copy of the particulars?

MR. PARTINGTON: Yes, I can give you one, Your Honor.

THE COURT: All right. In this case this is—case—this case alleges a violation of the order for protection issued in FCDA number 971347, and it alleges that this order was violated on September 25th, 1998. And the State has filed a bill of particulars indicating that basis for the alleged violation is that the defendant appeared at the plaintiff's residence and argued with the plaintiff about visitation.

MR. PARTINGTON: That's correct. He requested visitation that weekend from his ex-wife and she just straight said no and finally agreed he could have visitation the following weekend, and he left.

THE COURT: The State also alleges that—basically alleges that the defendant violated Section B,1 of the restraining order which prohibits defendant from oral contact with the plaintiff. However, the State did not focus on Section B —

MR. PARTINGTON: 2.

THE COURT:—is it B,2, which actually allows contact for purposes, whether by telephone or in person, for purposes of discussing visitation. So, therefore, the Court finds that as a matter of law the

alleged conduct under this case does not constitute a violation of the restraining order. And, therefore, the Court is going to dismiss this case with prejudice.

The State appealed the family court's November 16, 1998 Order of Dismissal.

The family court dismissed the complaint because the proof specified in the bill could not, "as a matter of law," constitute the crime defined by HRS § 586–11. We therefore consider on appeal whether the family court was right or wrong in its decision.[3]

In its opening brief, the State essentially argues two things, (1) that the complaint and the bill of particulars were sufficient to charge an offense and to adequately inform Mr. Valenzona of the specifics of the charge, and (2) that Mr. Valenzona's telephone call to Ms. Valenzona during the evening of September 24, 1998 and his paging her several times early in the morning of September 25, along with his visit to her residence later on September 25, were sufficient acts to constitute the offense charged.

The first argument misapprehends the question on appeal.

■■■ The family court had discretion to require the State to file a bill of particulars, *in order to inform Mr. Valenzona of the specifics of the charge*, exercising its discretion in light of the primary purposes of a bill of particulars, which are to enable a defendant to prepare for trial and to prevent surprise. A secondary purpose of a bill of particulars is to permit the defendant to claim double jeopardy in the event of a later prosecution for the same offense.[4]

The question on appeal is not whether the complaint and the bill of particulars charged an offense and adequately informed Mr. Valenzona of the specifics of the charge. It was never Mr. Valenzona's position that the complaint failed to charge an offense. And the

bill resolved his request and motion for specifics of the charge.

The crux of this appeal is that once a bill of particulars is filed, the State is limited to proving the particulars specified in the bill.[5]

■■■ The question on appeal, then, is whether the particulars specified in the bill, if proven, would constitute a violation of HRS § 586–11.

In its reply brief, the State recognizes as much, though it clings to its original arguments about sufficiency of the charge and adequacy of notice.

With respect to its second argument in the opening brief, the State also recognizes in its reply brief[6] that it had ruled out Mr. Valenzona's electronic communications to Ms. Valenzona as acts which could form all or any part of the conduct constituting the offense charged.

The State undertook to base its proof of the *actus reus* of the offense solely upon Mr. Valenzona's visit to Ms. Valenzona's residence on September 25, 1998. According to the State's clarification of its bill of particulars, the electronic communications were, at most, predicates to the allegedly criminal conduct of the personal visit.

Given the posture of the proof stated in the bill of particulars, the State was limited in the essentials to proving that: (1) during the evening of September 24, 1998, Mr. Valenzona telephoned Ms. Valenzona regarding visitation; (2) that early the next morning he paged her several times; and (3) that later the same day he appeared at her residence and argued with her about visitation.

Given the State's clarification of its bill of particulars, the State was limited in the essentials to arguing that Mr. Valenzona committed the crime defined by HRS § 586–11

3. *State v. Monay*, 85 Hawai'i 282, 283, 943 P.2d 908, 909 (1997) (on appeal, a trial court's conclusions of law are reviewed under the right/wrong standard; interpretation of a statute is a question of law reviewed *de novo* ).

4. *State v. Reed*, 77 Hawai'i 72, 78, 881 P.2d 1218, 1224 (1994).

5. *Reed*, 77 Hawai'i at 79, 881 P.2d at 1225; *State v. Kim*, 71 Haw. 134, 138, 785 P.2d 941, 943 (1990); *State v. Erickson*, 60 Haw. 8, 9, 586 P.2d 1022, 1023 (1978); *State v. Harper*, 1 Haw.App. 481, 486, 620 P.2d 1087, 1091 (1980).

6. These belated realizations are apparently due to the late receipt of the hearings transcripts.

when he argued about visitation with Ms. Valenzona at her residence.

Whether such a case was a knowing or intentional violation of the protective order, despite the order's allowance for "LIMITED contact by telephone/in person for the purpose of visitation," is the pertinent question on appeal.

We answer, it was not.

The predicate act of telephoning was, according to the State's proof, "regarding visitation." The predicate acts of paging were, according to the State's proof, without discernible content vis-a-vis the protective order, though presumably they were either postscript to the telephone call "regarding visitation" or prelude to the personal visit. And the personal visit, the *actus reus* according to the State's proof, was an argument with Ms. Valenzona about visitation.

The contacts, though perhaps abrasive, were not facially excessive, and according to the State's own bill of particulars were either about visitation or without discernible scienter.

The State argued below that the contacts were outside of the protective order's exception for limited contact "for the purpose of visitation," and therefore criminal, because the scope of the exception was restricted to the physical acts of picking up and dropping off the children for visitation. The State also argued below, and argues on appeal, that there is something criminal about the contacts because they occurred at times other than those scheduled for visitation in the protective order.[7]

We disagree.

Contact "for the purpose of visitation," limited or not, necessarily involves not only its physical accomplishment but its myriad ancillary arrangements as well. When one is running late, one should call. When one is

unable to make it, one must call. When the child's soccer practice or violin recital necessitates, contact must be made to postpone or advance visitation, or perhaps change the loci for picking up and dropping off. When the child has a firm medical appointment set for the visitation time, the visiting parent should be informed beforehand.

And these ancillary contacts necessarily occur at times other than those scheduled for visitation by the court order. If the visiting parent is called away for an emergency on a weekday before a weekend visitation, and thus cannot make the visitation, surely the custodial parent should be immediately contacted with the news.

To criminalize visitation contact other than picking up and dropping off the kids, or visitation contact that occurs outside the times scheduled for the act of visitation, in the absence of specific enabling provisions in the protective order, is to render visitation unworkable. We are not permitted to interpret the law in such a manner.[8]

The State's remaining argument is that the family court erred in not looking behind the allegations of the bill of particulars for the criminal nature of the acts therein. The State argues that even if the predicate contacts and the *actus reus* were ostensibly for purposes of visitation, such purposes were mere guises for harassment.

■ Here again, the State refuses to accept the fact that what it alleged in the bill of particulars is by law what it is limited to proving. If the State meant to prove that Mr. Valenzona made the predicate contacts and went to Ms. Valenzona's residence in order to harass her, under the guise of discussing visitation, then that is what it should have alleged in its bill of particulars.

In its bill of particulars, the State basically committed itself to proving that Mr. Valenzona committed a crime by going to Ms. Valen-

---

7. The contacts occurred on Thursday, September 24, 1998, and Friday, September 25, 1998. The State claims Mr. Valenzona took scheduled visitation the previous weekend of September 18–20, 1998, and so was not entitled to visitation the following weekend. Mr. Valenzona, on the other hand, claims that scheduled visitation was disrupted after service of the protective order, such

that he was limited to about five overnight visitations after service of the order.

8. *See, e.g., State v. Arceo,* 84 Hawai'i 1, 19, 928 P.2d 843, 861 (1996) (we presume the legislature does not intend an absurd result; laws will be construed to avoid, if possible, inconsistency, contradiction and illogicality).

zona's residence and arguing with her about visitation. No doubt this was an unpleasant and unfortunate incident. But given the nature of visitation, it was not an uncommon incident, and in our view, definitely not a crime.

The State asserts a savings argument—that even if the family court's dismissal of the complaint was correct, "[w]here the court dismisses a charge for sufficiency, the language 'with prejudice' should be regarded as mere surplusage without legal effect. *State v. Lee*, 1 Haw.App. 510, 516, 620 P.2d 1091, 1095 (1980)." [9]

This was our holding in *Lee*, but it was a holding necessitated by an incomplete record, which prevented us from descrying whether the lower court indeed dismissed the indictment on the basis we could glean from the portion of the record that was before us.[10]

That is not the case here. The record is complete, and upon it we conclude that the allegations in the bill of particulars, to which the State's proof is limited, are insufficient to constitute a violation of HRS § 586–11.[11]

As Mr. Valenzona points out, the State in its bill of particulars failed to specify what it alleged, as it should have, but instead specified what it knew,[12] and therein lay all of its problems in this case. The State erred. The family court did not. We affirm.

---

9. Opening Brief of the State of Hawai'i, at 15.

10. *State v. Lee*, 1 Haw.App. 510, 515–16, 620 P.2d 1091, 1094–95 (1980).

11. *See State v. Lloyd*, 88 Hawai'i 188, 189–91, 964 P.2d 642, 643–45 (1998) (insufficiency of the evidence results in a "reversal" pursuant to Hawai'i Rules of Appellate Procedure Rule 35(e), ending the litigation on the merits).

12. Defendant–Appellee's Answering Brief, at 8–10.