KEITH K. VALENZONA, Plaintiff-Appellant,
v.
PETER B. CARLISLE, individually and as Prosecuting Attorney for the City and County of Honolulu; JAMES M. ANDERSON, DONN FUDO, ALEXA D.M. FUJISE, MIRIAM P. LOUI, DANE R. McARTHUR, CAROLINE M. MEE, SUZANNA L. TIAPULA, DEAN K. YOUNG, of the City and County of Honolulu; TAY DEERING AND ANTHONY SAGUN, individually and as Honolulu Police Department police officers and, CITY AND COUNTY OF HONOLULU, a municipal corporation, Defendants-Appellees
No. 26999
Intermediate Court of Appeals of Hawaii.
February 5, 2008.
On the briefs: Earle A. Partington for Plaintiff-Appellant.
David Z. Arakawa, Moana Yost (Corporation Counsel) for Defendants-Appellees.

MEMORANDUM OPINION
Circuit Judge HIFO, PRESIDING J., and Circuit Judges CHANG and SAKAMOTO, in place of RECKTENWALD, C.J., and WATANABE, LIM,[*] FOLEY, NAKAMURA, and FUJISE, JJ., recused.

I. INTRODUCTION
This appeal arises from the Circuit Court's granting of summary judgment in favor of all defendants with respect to all Plaintiff's claims.[**] Keith K. Valenzona, Plaintiff-Appellant ("Plaintiff-Appellant") brought three claims for damages: (1) against Honolulu Police officers Tay Deering ("Defendant Deering") and Anthony Sagun ("Defendant Sagun") for violations of 42 U.S.C. § 1983 (2000); (2) against Defendants Deering and Sagun and Defendant City and County of Honolulu for false arrest/false imprisonment; and (3) against Honolulu prosecuting attorneys Peter B. Carlisle, James M. Anderson, Donn Fudo, Alexa D.M. Fujise, Miriam P. Loui, Dane R. McArthur, Caroline M. Mee, Suzanna L. Tiapula, Dean K. Young, and Defendant City and County of Honolulu ("Defendant Prosecutors") for malicious prosecution. Judgment was entered in favor of Defendants on December 9, 2004 and this timely appeal followed. We affirm for the following reasons.

II. FACTS

A. Underlying Criminal Proceedings
Plaintiff-Appellant was married to Kathleen K. Valenzona ("Ms. Valenzona") and two children were born of this marriage. The marriage was dissolved by divorce decree on February 18, 1998. Ms. Valenzona was awarded custody of the children, subject to Plaintiff-Appellant's right of reasonable visitation. On October 14, 1997, at the request of Ms. Valenzona, the family court issued a Family Court Restraining Order ("protective order") against Plaintiff-Appellant, who was not in court and was not served the protective order until October 23, 1997. (Record on Appeal ("ROA") at 64).
The protective order was obviously a preprinted family court order on which the district family court judge chose from various paragraphs, those being invoked by hand-numbering the applicable paragraphs and handwriting details in some. The protective order refers to Ms. Valenzona as "Plaintiff' and read in pertinent part as follows:
B. CONTACT BETWEEN THE PARTIES
1 [X] XXXX/Defendant is prohibited from any and all contact, direct or indirect, including but not limited to oral, written and electronic (pager, telephone, voice mail, recorded message, e-mail) communication, including communication through third parties with the Plaintiff/XXXX and any minor children residing in the household at home, school or care provider. This includes visiting and/or remaining within three (3) blocks of the place of residence, school and/or employment of the Plaintiff/XXXX and within 100 feet of the Plaintiff/XXXX at all other (neutral) locations. In the event the parties happen upon each other at a neutral location, the subsequent arriving party shall leave immediately or stay at least 100 feet from the other. When the parties happen upon each other at the same time at a neutral location, the Defendant shall leave immediately or stay at least 100 feet from the plaintiff. ["no-contact provision"]
2 [X] Notwithstanding the foregoing order, XXXX/Defendant may have LIMITED contact with Plaintiff/XXXX by telephone/in person for the purpose of [X] visitation [ ] counseling or [ ] __________________. ["visitation exception provision"]
3 [X] Plaintiff/XXXX shall promptly report any violations of this Order to the [X] Honolulu Police Department, phone 911, [ ] Military Police Department.
...
C. OTHER ORDERS
Counseling, Temporary Custody, and Visitation
4 [X] Plaintiff/XXXX shall have temporary legal and physical custody of the parties' minor children: Kory A. Valenzona, born September 18, 1987 and Kery K. Valenzona, born August 5, 1989, until the expiration date of this order or until further order of the court.
5 [X] XXXX/Defendant shall have visitation with the minor children as follows: [ ] Pursuant to attached exhibit [] supervised visitation; [X] Every other weekend from Friday 6:30 pm to Sunday 6:00 pm commencing October 24, 1997. Plaintiff or a mutual third party shall transfer the minors. [Previous sentence from "Every" written by hand]
(ROA at 58-60) (underscore and capitalization in original).
Nearly a year later, in the early morning of Friday, September 25, 1998, Plaintiff-Appellant went to the home of Ms. Valenzona which he asserts was to arrange visitation for that weekend with their children. A brief argument ensued and Plaintiff-Appellant returned to his home. As instructed by the protective order, Ms. Valenzona promptly contacted the Honolulu Police Department ("HPD"), and Defendant Deering was dispatched at 7:39 a.m., arriving at 7:43 a.m. at her home. Upon Defendant Deering's arrival, Ms. Valenzona presented the officer with the protective order and explained to him the situation.[1] In turn, Defendant Deering called HPD dispatch and requested that a police officer locate and arrest Plaintiff-Appellant for a violation of the order.
Defendant Sagun responded to the call from HPD dispatch and confronted Plaintiff-Appellant at his home. Plaintiff-Appellant explained that he went to Ms. Valenzona's home to request visitation with his children and asked Defendant Sagun to read the protective order, which he did not provide to Defendant Sagun and which Defendant Sagun did not have.[2] Notwithstanding Plaintiff-Appellant's explanation and request, Defendant Sagun arrested Plaintiff-Appellant at 8:03 a.m. on September 25, 1998, for the alleged violation.
On September 29, 1998, the prosecutor's office filed a complaint in the Family Court of the First Circuit, charging Plaintiff-Appellant with the criminal offense of violating an order of protection under Hawai'i Revised Statues ("HRS") § 586-11 (1993).[3] Thereafter, the criminal defense attorney successfully moved for a bill of particulars. On November 16, 1998, the circuit court judge acting as the family court dismissed with prejudice the complaint against Plaintiff-Appellant ruling that, as a matter of law, the facts specified in the bill of particulars established that the charged offense had not been committed.[4] The prosecutor's office appealed the dismissal.
By decision on December 15, 1999, as amended on December 17, 1999, the Intermediate Court of Appeals ("ICA") in State v. Valenzona, 92 Hawai`i 449, 992 P.2d 718 (Haw. App. 1999), affirmed the family court's dismissal of the complaint against Plaintiff-Appellant. On January 14, 2000, the prosecutor's office applied for a writ of certiorari to the Supreme Court of Hawaii, but said writ was denied on January 24, 2000, 2000 Haw. LEXIS 45.

B. Civil Action
Plaintiff-Appellant filed a civil complaint on December 31, 2001, against the above-mentioned defendants. First, Plaintiff-Appellant sought relief pursuant to 42 U.S.C. § 1983 alleging that Defendants Deering and Sagun violated his constitutional rights under the Fourth and Fourteenth Amendments. Second, Plaintiff-Appellant alleged state tort law claims of false arrest/false imprisonment against said defendants. Third, Plaintiff-Appellant alleged state tort law claims of malicious prosecution against Defendant Prosecutors. Lastly, Plaintiff-Appellant alleged that the City and County of Honolulu was liable under the doctrine of respondeat superior for the conduct alleged in the second and third claims.
On June 8, 2004, all defendants moved for summary judgment on all claims. Defendants Deering, Sagun and Prosecutors argued that they were entitled to qualified immunity or in the alternative; there was probable cause to arrest and prosecute Plaintiff-Appellant.
On November 8, 2004, the circuit court granted summary judgment in favor of defendants. In addressing Plaintiff-Appellant's claims against the officers, the court stated: (1) Defendants Deering and Sagun were entitled to qualified immunity regarding the 42 U.S.0 § 1983 claims, and they had probable cause to arrest Plaintiff-Appellant; (2) regarding the state law claims of false arrest and false imprisonment, Defendants Deering and Sagun were government officials performing a public duty and therefore protected by qualified immunity.
With respect to Defendant Prosecutors, the court found that Plaintiff-Appellant failed to prove the requirements of malicious prosecution.[5] The court acknowledged that the first prong was indeed satisfied since the previous proceeding was terminated in favor of Plaintiff-Appellant. However, the court stated that there was probable cause when the proceeding was initiated and that Plaintiff-Appellant failed to present evidence that any of the Defendant Prosecutors acted with malice.
Finally, the court found that because all Defendants were entitled to qualified immunity, the City and County of Honolulu could not be held liable under respondeat superior. The lower court impliedly found there was no genuine issue of material fact, and none are raised on appeal.

III. STANDARD OF REVIEW
On appeal, "an order of summary judgment is reviewed under the same standard applied by the trial courts." Reed v. City & County of Honolulu, 76 Hawai`i 219, 225, 873 P.2d 98, 104 (1994). "Summary judgment is appropriate where the moving party demonstrates that there are no genuine issues of material fact and it is entitled to judgment as a matter of law." Id. (citing Kaneohe Bay Cruises, Inc. v. Hirata, 75 Haw. 250, 258, 861 P.2d 1, 6 (1993)). "Bare allegations or factually unsupported conclusions are insufficient to raise a genuine issue of material fact, and therefore insufficient to reverse a grant of summary judgment." Id. (citing Briggs v. Hotel Corp. of the Pacific, 73 Haw. 276, 281 n.5, 831 P.2d 1335, 1339 n.5 (1992)) (citing K.M. Young & Assoc., Inc. v. Cieslik, 4 Haw. App. 657, 658, 675 P.2d 793, 796 (1983)).

IV. DISCUSSION
To prevail, each of Plaintiff-Appellant's claims requires lack of probable cause for the arrest or filing of the criminal complaint. As a threshold matter, Plaintiff-Appellant contends that the ICA's decision in State v. Valenzona, 92 Hawaii 449, 992 P.2d 718 (1999), cert. denied, 2000 Haw. LEXIS 45, is dispositive on this issue. We disagree.
First, Valenzona did not address whether probable cause existed. The question on appeal was limited to "whether the particulars specified in the bill, if proven, would constitute a violation of HRS § 586-11." Id. at 452, 992 P.2d at 721. In the underlying prosecution for violation of an order of protection, the family court dismissed the complaint because the allegations in the bill could not, as a matter of law, constitute the crime defined by HRS § 586-11. Id. In making its determination, the family court did not inquire as to the presence or absence of probable cause for the arrest and prosecution of Plaintiff-Appellant.
On appeal, the ICA ultimately affirmed the family court's decision that facts alleged in the bill of particulars did not constitute a violation of HRS § 586-11. Id. at 449, 992 P.2d at 718. In affirming the family court's decision, the ICA in Valenzona similarly did not opine as to the presence or absence of probable cause.[6] Indeed, the appellate court suggested there could have been probable cause for an arrest, but not on the basis of the specifics in the bill of particulars which the State filed and thereby limited itself to prove:
The State's remaining argument is that the family court erred in not looking behind the allegations of the bill of particulars for the criminal nature of the acts therein. The State argues that even if the predicate contacts and the actus reus were ostensibly for purposes of visitation, such purposes were mere guises for harassment.
Here again, the state refuses to accept the fact that what it alleged in the bill of particulars is by law what it is limited to proving. If the State meant to prove that Mr. Valenzona made the predicate contacts and went to Ms. Valenzona's residence in order to harass her, under the guise of discussing visitation, then that is what it should have alleged in its bill of particulars.
Id. at 453, 992 P.2d at 722.
Second, we note probable cause for a related offense different from the one charged is cognizable for constitutional purposes and does not violate Plaintiff-Appellant's constitutional rights. State v. Vance, 61 Haw. 291, 297, 602 P.2d 933, 938 (1979) ("Thus, even if the testimony presented did not demonstrate probable cause to arrest the appellant for disorderly conduct, if probable cause was present in regard to a different though closely related offense, the arrest would be valid."); State v. Kimball, 54 Haw. 83, 87 503 P.2d 176, 179 (1972) ("The point of importance is that the facts and circumstances within the officer's knowledge afforded probable cause to arrest under either the ordinance or the statute."). Here, the facts and circumstances known to Defendant Deering would constitute probable cause for harassment, HRS § 711-1106(e).[7]
Finally, the governing standards discussed in State v. Kido, 109 Hawaii 458, 128 P.3d 340 (2006) render Plaintiff-Appellant's argument meritless. In Kido, appellant argued inter alia, "the existence of probable cause is not fixed at a point in time, but can be retroactively invalidated." Id. at 462, 128 P.3d at 344. The Hawaii Supreme Court disagreed:
As the language of the statute [HRS § 803-5(1993)] indicates, the existence of probable cause for a warrantless arrest is determined based on the facts and circumstances as known to a reasonable police officer at the time of the arrest. See State v. Servantes, 72 Haw. 35, 39, 804 P.2d 1347, 1349 (1991) (evaluating probable cause at the time of the defendant's arrest). See also Valente v. Wallace, 332 F.3d 30, 32 (1st Cir. 2003) ("The [probable cause] test is objective and turns on what a reasonable police officer would conclude based on the evidence actually available at the time (and not on unknown facts or subsequent events)." (Emphasis added; citation omitted.)). Here, Kido does not dispute the relevant point  namely, that when Officer Pereira arrested him on March 30, 2002, the facts and circumstances known to Pereira at that time reasonably gave rise to the belief that Kido was a convicted felon in violation of a condition of probation. No more was required to establish probable cause  that Kido's conviction and probation order would be vacated one year later is irrelevant as a matter of law to the analysis.
Indeed, prior decisions of this court confirm that subsequent events can neither support nor invalidate the existence of probable cause at the time of the search or seizure. First, this court has held that subsequent events cannot justify a search or seizure if probable cause was lacking at the time search or seizure was conducted. See State v. Phillips, 67 Haw. 535, 541, 696 P.2d 346, 351 (1985) ("A search is not to be made legal by what it turns up." (Citation, quotation marks, and brackets omitted.)). Second, this court has approved the converse proposition -namely, that subsequent events cannot invalidate probable cause (i.e., a seizure is not to be made illegal by what it fails to turn up). See House v. Ane, 56 Haw. 383, 391, 538 P.2d 320, 326 (1975) (stating that where a warrantless arrest is made in the reasonable belief that an offense is being committed, "the fact that it later turns out that [the arresting officers] were mistaken in their belief would not convert the arrest based upon probable cause into an unlawful one") (citations omitted). Consequently, Kido's argument  that the invalidation of his prior conviction (and thus probation order) on appeal also retroactively invalidates probable cause for an arrest based on violation of that probation order  is incorrect.
Id. at 462, 128 P.3d at 344 (italics in original; HRS citation and bold added).
Equally here, the result on appeal in Valenzona is not relevant as to whether Plaintiff-Appellant was lawfully arrested or charged; e.g., whether the officers had probable cause to arrest at that time. Therefore, we find it necessary to examine the facts and circumstances as to each police officer defendant at the time of arrest and as to the remaining defendants at the time of charging.

A. Probable Cause Determination
The Hawai`i Supreme Court, in describing the probable cause determination has stated:
Probable cause exists when the facts and circumstances within one's knowledge and of which one has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been committed. This requires more than a mere suspicion but less than a certainty.
State v. Cambra, 109 Hawai'i 84, 86, 123 P.3d 679, 681 (2005) (quoting Carlisle ex rel. State v. Ten Thousand Four Hundred Forty-Seven Dollars in U.S. Currency ($10,447.00), 104 Hawaii 323, 331, 89 P.3d 823, 831 (2004) (quoting State v. Detroy, 102 Hawai`i 13, 18, 72 P.3d 485, 490 (2003)) (emphasis omitted).[8] This standard consists of two separate components: "The first sentence describes the standard for determining the presence of probable cause. The second sentence describes the quantum of proof necessary to satisfy the standard." Id.
In determining whether probable cause exists the Hawaii Supreme Court has "long held that the standard for determining probable cause is a practical and nontechnical concept, which involves a balancing of the citizens' right to be free from unreasonable interference with privacy and from unfounded charges of crime and the needs of the community to be protected by law enforcement ...." Id. "When the evidence as to the facts necessary to constitute probable cause is clear, the question of probable cause is for the court to determine." Lopez v. Wigwam Dept. Stores No. 10, Inc., 49 Haw. 416, 423, 421 P.2d 289, 294 (1966).

1. Defendant Deering
On this record the evidence is clear that Defendant Deering had probable cause to effectuate the arrest of Plaintiff-Appellant. It is undisputed that Defendant Deering was sent via dispatch to Ms. Valenzona's home where he took the following statement from her as complaining witness:[9]
Date: 9-25-98
Time: 7:35 a
Where: ... Waipahu 96797
Who: Kathleen Valenzona & Keith Valenzona
Witnesses: None
Heard doorbell ringing, went to answer door & Keith was standing at the door entrance. I told him to leave he started arguing about seeing the children. I told him he would see them next weekend and he continued to argue. Again I asked him to leave because of an existing restraining order, but he continued to ring the doorbell and stay. Keith was served the restraining order. I did not give him permission to come to the house. (ROA at 68).
In determining that there was probable cause to arrest, Defendant Deering testified in deposition that he read the no-contact provision of the protective order and found that Plaintiff-Appellant violated said order by going to Ms. Valenzona's home and remaining there after being asked to leave twice.[10] His contemporaneous writing found in his police report makes clear he believed upon perusing the protective order that Plaintiff-Appellant was in violation of section B. 1., the no-contact provision. See footnote 1, supra. He then requested a follow up officer to be sent to Plaintiff-Appellant's home address to effectuate the arrest.
In this case, based upon Ms. Valenzona's statement and a reading of the no-contact provision, Defendant Deering reasonably could be certain that Plaintiff-Appellant had violated the order of protection. To the extent he was aware of the visitation exception provision, he reasonably possessed "more than a mere suspicion" that the protective order was violated, because Ms. Valenzona's statement asserted his visitation was the following weekend[11] and because he was there in the early morning on Friday, which was not during the authorized hours of weekend visitation under the protective order (6:30 p.m. Friday to 6:00 p.m. Sunday) even if, as Plaintiff-Appellant asserts, it was his weekend. Although the ICA subsequently interpreted the protective order to allow limited physical contact for arranging visits as well as effectuating them, there was nothing to require that interpretation before Valenzona. Indeed, the "LIMITED contact" of the visitation exception provision read together with the visitation sections (C4 and C5) of the protective order warranted a reasonable interpretation before Valenzona that Plaintiff-Appellant was not permitted to be at the house anytime, and that Ms. Valenzona (of a neutral third person) would have contact with Plaintiff-Appellant only when transferring the children to him for his visits. In addition, there is nothing to prohibit a person of reasonable caution to believe a violation of the protective order occurred after Ms. Valenzona confirmed the future weekend visit and he refused to leave. Based upon the foregoing, we find that Defendant Deering instigated the arrest of Plaintiff-Appellant with probable cause.

2. Defendant Sagun
Our analysis leads to the conclusion that Defendant Sagun lawfully arrested Plaintiff-Appellant. Aside from his Valenzona argument, Plaintiff-Appellant asserts that the arresting officer, Defendant Sagun, had a duty to obtain and read the protective order and "to hear Plaintiff-Appellant's side of the story, particularly in light of the fact that Sagun was not responding to an emergency or to any situation where time was of the essence." (Plaintiff-Appellant's Opening Brief at 21). We find this argument unpersuasive in light of relevant dicta from State v. Barnes, 58 Haw. 333, 568 P.2d 1207 (1997).[12]
The Barnes court[13] stated in a footnote as follows:
To require the arresting officer to have personal knowledge of all the facts in every case would seriously curtail the investigative teamwork and the concerted action that are vital components of modern law enforcement. Sufficient probable cause for the arrest would also exist where the police department transmits direct orders, based on information which would support an arrest without a warrant, to the arresting officer notwithstanding his lack of personal or first hand knowledge of all the facts.
Id. at 337 n.1, 568 P.2d at 1211 n.1 (citing Williams v. United States, 308 F.2d 326 (D.C. Cir. 1962); State v. Pokini, 45 Haw. 295, 367 P.2d 499 (1961)) (bold added).
We find this passage instructive. Here, Defendant Sagun was ordered to arrest Plaintiff-Appellant. The order was transmitted via police radio through HPD dispatch at Defendant Deering's instance. Although Defendant Sagun did not have personal knowledge of the underlying facts to support probable cause, his arrest was lawful because it was supported by the requisite probable cause that Defendant Deering had to make and/or order the arrest. Based upon the Barnes rationale, sufficient probable cause for the arrest of Plaintiff-Appellant existed at the time Defendant Sagun effectuated the arrest of Plaintiff-Appellant.

3. Initiating the Criminal Proceedings
We now consider whether there was probable cause to initiate the criminal proceedings against Plaintiff-Appellant. In this regard, Defendant Prosecutors cannot take refuge in the arresting officers' probable cause. The analysis requires an independent examination of what the charging prosecutor knew at the time of initiating the complaint. (See discussion of second element of malicious prosecution infra, Section IV. D.). The evidence is clear that there was probable cause to file the criminal complaint.
It is undisputed that Defendant Loui, the charging prosecutor, initiated the criminal proceedings after review of the protective order and the police report.[14] She also confirmed that the protective order was not expired. Defendant Loui testified in deposition that she was satisfied based upon her review of the police reports and the protective order that there was probable cause to charge Plaintiff-Appellant with violating the protective order. Defendant Loui specifically testified that Plaintiff-Appellant was in violation of the no-contact provision in paragraph B-1 notwithstanding the visitation exception provision contained in paragraph B-2. She accurately quoted the contact allowed pursuant to paragraph B-2 as "LIMITED contact for the purpose of visitation with the children." The circuit judge in granting summary judgment against Plaintiff-Appellant determined Defendant Loui had probable cause, and we agree.
Defendant Loui interpreted the exception in the protective order to mean that Plaintiff-Appellant would be allowed contact with Ms. Valenzona for the limited purpose of transferring the children, i.e., dropping off and picking up the children on Plaintiff-Appellant's visitation weekends or calling to arrange the same. Although the district family court and the ICA subsequently disagreed with this interpretation of the protective order, reasonable minds may and often do disagree. As with Defendant police officers, the subsequent court rulings are not relevant to the analysis. See State v. Kido, supra. Based upon the foregoing, the evidence is clear that Defendant Loui acted with the requisite probable cause.

B. 42 U.S.C. 1983
We now consider the civil rights claim against Defendants Deering and Sagun, which the circuit court analyzed in terms of probable cause and qualified immunity. Under either or both the summary judgment against Plaintiff-Appellant was justified. "In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence." Saucier v. Katz, 533 U.S. 194, 200 (2001). "Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Qualified immunity is `an entitlement not to stand trial or face the other burdens of litigation.'" Id. (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).
Here, Defendants Deering and Sagun did not violate Plaintiff-Appellants constitutional rights arising from the Fourth and Fourteenth Amendments. "[A]n arrest without a warrant will be upheld only where there was probable cause for the arrest." Barnes, at 335, 568 P.2d at 1209. Based upon the probable cause discussion above, Defendants Deering and Sagun effectuated a valid arrest. Therefore, "qualified immunity bars claims against state officials in their individual capacities if their conduct did not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known." Pahk v. State, 109 F. Supp. 2d 1262, 1268 (D. Haw. 2000).[15] Thus, summary judgment was proper in this regard.

C. False Arrest/False Imprisonment
We turn now to the false arrest/false imprisonment claims against Defendants Deering and Sagun. "[A] person who is falsely arrested is at the same time falsely imprisoned, false arrest and false imprisonment as tort claims are distinguishable only in terminology." Reed v. City and County of Honolulu, 76 Hawai'i 219, 230, 873 P.2d 98, 109 (1994) (internal quotations and citations omitted). "For both false arrest and false imprisonment, the essential elements are (1) the detention or restraint of one against his or her will, and (2) the unlawfulness of such detention or restraint." Id. (internal quotations and citations omitted). In this case, Plaintiff-Appellant's arrest was obviously against his will, however, we find that his detention was lawful.
"Where an arrest is effectuated without a warrant, the existence of probable cause to arrest is an affirmative defense to an action for false imprisonment. Kalilikane v. McCravey, 69 Haw. 145, 149, 737 P.2d 862, 865 (1987) (citing Towse v. State, 64 Haw. 624, 635, 647 P.2d 696, 704 (1982)). "An officer who makes an arrest with probable cause is not liable for false arrest simply because the suspect subsequently is proven innocent." Kalilikane at 149, 737 P.2d 865 (citing House v. Ane, 56 Haw. 383, 391, 538 P.2d 320, 326 (1975)). In Kalilikane, the court found that the officer had probable cause to believe a misdemeanor was being committed and found that the trial court properly directed the verdict in favor of the defendants on the false arrest claim. Kalilikane, at 149, 737 P.2d 865.
Similar to Kalilikane, Plaintiff-Appellant's claim for false arrest/false imprisonment fails as a matter of law because there was probable cause for his arrest. Summary judgment is affirmed in this regard.

D. Malicious Prosecution
We last consider the claims for malicious prosecution against Defendant Prosecutors and determine summary judgment was properly granted against Plaintiff-Appellant. There are three elements with respect to the tort of alicious prosecution: "(1) that the prior proceedings were terminated in the plaintiff's favor; (2) that the prior proceedings were initiated without probable cause; and (3) that the prior proceedings were initiated with malice." Reed v. City and County of Honolulu, 76 Hawai'i 219, 230, 873 P.2d 98, 109 (1994) (internal quotations and citations omitted); accord Wong v. Panis, 7 Haw. App. 414, 419, 772 P.2d 695, 699 (1989) (citing Myers v. Cohen, 67 Haw. 389, 391, 688 P.2d 1145, 1148 (1984)); Brodie v. Hawaii Auto Retail Gas Dealers Ass'n, Inc., 2 Haw. App. 316, 318, 631 P.2d 600, 602 (1981), rey'd on other grounds, 65 Haw. 595 (1982); (citing Prosser, Law of Torts (4th Ed.) § 120 at 850-56 (1971)). We agree with Plaintiff-Appellant that the first element was met because Valenzona upheld the dismissal of the complaint against Plaintiff-Appellant, but the claims fail because the prior criminal proceedings were initiated with probable cause. We need not reach the third element.
We note that Plaintiff-Appellant attempted to expand the second element to prior proceedings which were "initiated or continued without probable cause." Plaintiff-Appellant's Opening Brief at 21 (bold added). This is simply not the law, and his reliance on Reed is totally misplaced. The inquiry ends at initiation of the prior proceedings; in this case, focusing on whether the charging prosecutor had probable cause to file the criminal complaint. The remaining Defendant Prosecutors cannot be liable for filing the bill of particulars, defending against the motion to dismiss or taking an appeal therefrom. To determine otherwise would turn the law on its head by eviscerating the prosecution's statutory right to oppose and appeal from an adverse decision. E.g., HRS §641-13 (2007) ("An appeal may be taken by ... the State ... in all criminal cases, in the following instances: (1.) From any order or judgment quashing, setting aside or sustaining a motion to dismiss, any indictment, or complaint or any count thereof; ....") (bold added).[16]
Thus, the determination that Defendant Loui had probable cause to initiate the underlying criminal action (see IV. A. 3. supra) is dispositive. The second element is not satisfied. Therefore, we find as a matter of law that Plaintiff-Appellant's claim for malicious prosecution fails. We affirm summary judgment in this regard.

E. Authentication of Exhibits
Plaintiff-Appellant contends that the following exhibits were not properly authenticated: "Exhibit C (uncertified police reports), Exhibits D, E, G, H, K, M, O, BB, and DD (uncertified depositions), and Exhibits I and W (uncertified criminal proceedings transcripts)." (Plaintiff-Appellant's Opening Brief at 27) As a result, Plaintiff-Appellant contends that the court should not have considered the above-mentioned exhibits.
"The HRCP require that exhibits attached to a motion for summary judgment must be supported by an appropriate affidavit or certification." Fuller v. Pacific Medical Collections, Inc., 78 Hawaii 213, 224, 891 P.2d 300, 311 (1995). "HRCP Rule 56(e) provides that `sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.' The "papers' must be admissible in evidence." Id. Contrary to Plaintiff-Appellant's contentions, the above-mentioned exhibits were all properly authenticated.[17]

1. Exhibit C
Exhibit C is a copy of the police report regarding the underlying incident dated September 25, 1998. Although not properly authenticated in Defendants' Motion for Summary Judgment, Defendants subsequently attached the Affidavit of John N. Gyotoku, Custodian of Records for HPD, as Exhibit 1 of Defendants Reply to Plaintiff-Appellant's Memorandum in Opposition to Defendants Motion for Summary Judgment. Therefore, we find that Exhibit C was properly authenticated.

2. Exhibits D, E, G, H, K, M, O, BB, and DD
The above-mentioned exhibits consist of relevant portions of individual defendants' depositions. Plaintiff-Appellant argues that said transcripts were not properly authenticated and therefore improperly considered by the court. We disagree.
HRE 902 provides in pertinent part: "Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following: ... (8) Acknowledged documents. Documents accompanied by a certificate of acknowledgement executed in the manner provided by law by a notary public or other officer authorized by law to take acknowledgments." HRE 902(8). Due to the fact that all depositions contained a certification page, signed by the respective Certified Shorthand Reporter/Notary Public, Exhibits D, E, G, H, K, M, 0, BB, and DD were self-authenticated pursuant to HRE 902(8).[18]

3. Exhibits I and W
Exhibits I and W are transcripts of the family courts' proceedings regarding Plaintiff-Appellant's motion for bill of particulars, held on November 2, 1998 and November 16, 1998 respectively. Similar to the exhibits mentioned in the previous section, Exhibits I and W were self-authenticated due to certificate on the last page of the exhibits. Therefore, Exhibits I and W were self-authenticated pursuant to HRE 902(8) and properly considered by the court.

V. CONCLUSION
Accordingly, based upon the foregoing, we affirm the Circuit Court's summary judgment in favor of Defendants.
NOTES
[*] Associate Judge John S.W. Lim filed a recusal on May 29, 2007 but passed away on June 13, 2007.
[**] The Honorable Bert I. Ayabe presided over this matter.
[1] Defendant Deering testified in his 2003 deposition that he had no recall of the incident but would have read the no-contact provision and obviously took Ms. Valenzona's statement, which is in the police report: "Based upon her statement, her statement was that he rang the door bell at her home. She told him to leave. He started arguing about seeing the children. Continued to argue. After she had told him that he would see the children next weekend, continued to ring the door bell. And that's where her statement ends. She states that the restraining order was served and she did not give him permission to come to the house." We quote her statement in Section IV.A.1. infra. His testimony regarding the protective order is consistent with his police report signed by him the same day which reads in pertinent part as follows: "TRO/PERUSED VIOLATION: I perused the copy of the TRO presented by Kathleen and found he was in violation of section B. 1. Defendant is prohibited from any and all contact... This includes visiting and/or remaining within (3) blocks of place of residence,.. [sic)" (ROA at 67).
[2] Defendant Sagun had actually served the protective order on Plaintiff-Appellant nearly a year before, on October 23, 1997.
[3] HRS § 586-11 (1993) imposes criminal sanctions for violation of a HRS § 586-5.5 (Supp. 1997) protective order. HRS § 586-11 provides in pertinent part: "Whenever an order for protection is granted pursuant to this chapter, a respondent or person to be restrained who knowingly or intentionally violates the order for protection is guilty of a misdemeanor." HRS § 586-5.5 provides: "If after hearing all relevant evidence, the court finds that the respondent has failed to show cause why the order should not be continued and that a protective order is necessary to prevent domestic abuse, the court may order that a protective order be issued for such further period as the court deems appropriate
[4] Once a bill of particulars is filed, the State is limited to proving the particulars specified in the bill. The court in State v. Valenzona, 92 Hawaii 449,451-52, 992 P.2d 718, 720-21 (1999), cert. denied, 2000 Haw. LEXIS 45, quoted the bill of particulars and the family circuit judge's oral decision, which we quote in pertinent part herein:

5. On or about September 25, 1998 Defendant appeared at Ms. Valenzona's residence on ..., which is located on the island of Oahu and argued with Ms. Valenzona about visitation with their children.
6. Defendant's visitation schedule permits visitation every other weekend, Restraining Order Section C(5), and Defendant had visitation with his children the weekend immediately preceding September 25, 1998.
7. Defendant had called Ms. Valenzona in the evening on September 24, 1998 regarding visitation and paged Ms. Valenzona several times on the morning of September 25, 1998 beginning at approximately 6:00 a.m.
8. Defendant violated Section B(1) of the Restraining Order which prohibits Defendant from all contact with Ms. Valenzona. The exception provided for contact regarding visitation is a limited exception which does not apply in this case under these circumstances.
THE COURT: ... And the State has filed a bill of particulars indicating that basis for the alleged violation is that the defendant appeared at the plaintiffs residence and argued with the plaintiff about visitation.
...
[I]s it B,2, which actually allows contact for purposes, whether by telephone or in person, for purposes of discussing visitation. So, therefore, the Court finds that as a matter of law the alleged conduct under this case does not constitute a violation of the restraining order. And, therefore, the Court is going to dismiss this case with prejudice.
[5] Brodie v. Hawaii Auto Retail Gas Dealers Ass'n, Inc., 2 Haw.App. 316, 631 P.2d 600 (1981), rev'd on other grounds, 65 Haw. 595 (1982), requires that plaintiff prove: (1) the previous proceeding was terminated in favor of the plaintiff; (2) the previous proceeding was initiated without probable cause; and (3) the previous proceeding was initiated with malice.
[6] The ICA's published decision inter alia, interpreted the language of a form family court order from which the district family court judge had chosen certain paragraphs, making those paragraphs together with handwritten details the text of the prohibited acts. The appellate court held that the exception to the nocontact provision included not only actual visitation but also arrangements for the same.
[7] The record is unclear whether Defendant Deering also had probable cause for the petty misdemeanor offense of criminal trespass in the second degree, HRS § 708-814(1)(a).
[8] HRS § 803-5 (1993) which provides for warrantless arrests by a police officer where the officer has probable cause defines probable cause as existing "when the facts and circumstances within the officer's knowledge and of which the officer has reasonably trust worthy information are sufficient in themselves to wan-ant a person of reasonable caution in the belief that a crime has been or is being committed."
[9] Defendant Deering testified at deposition that he did not specifically recall responding to the call and taking a statement from Ms. Valenzona. In order to refresh his memory, he was presented with a copy of his written report, which is part of the police report in evidence on the summary judgment motion.
[10] Plaintiff-Appellant's counsel focused on the visitation exception provision which at deposition Defendant Deering could not say he had actually read before arrest. He then posed the following hypothetical: "[I]f you were a supervisor and you were presented with this [Ms. Valenzona's written statement] and this {the protective order], and the officer in the field was asking should I arrest [Plaintiff-Appellant], what would your recommendation be?" Defendant Deering replied: "Based upon what's in front of me here, reading her statement, reading Paragraphs B1 and B2 and going back to what I'm stating is being very vague concerning the word, limited contact, Mrs. Valenzona repeatedly states that she asked [Plaintiff-Appellant] to leave and refused. So based upon limited contact, I would feel comfortable with the officer-if I was a supervisor, I would feel comfortable with the officer making an arrest for a violation."
[11] On appeal, Plaintiff-Appellant argues that a simple math calculation would reveal it was Plaintiff-Appellant's weekend to have the children. There is nothing in the record on summary judgment to support this argument or to suggest Defendant Deering had any basis for making such a calculation. The protective order issued on October 14, 1997, gave Plaintiff-Appellant weekend visitation commencing on October 24, 1997. Plaintiff-Appellant was not served the protective order until nine (9) days later, on October 23, 1997. There is no evidence Defendant Deering knew: (1) the date of service; (2) the date of first visit; or (3) whether there were any informal modifications made by the parties to the protective order. Moreover, there is no evidence that he had a 1997 calendar on September 25, 1998, to reference.
[12] Whether Miranda rights would countervail this argument is not an issue raised on appeal. See Miranda v. Arizona, 384 U.S. 436 (1966).
[13] In Barnes, the Hawaii Supreme Court discussed the imputation of one officer's knowledge to another under the doctrine of police officers "acting in concert." There, as here, the doctrine did not apply to the facts involved in the case. Id. at 336-37, P.2d at 1210-11. While Defendant Sagun had served Plaintiff-Appellant with the order of protection, he had no knowledge of the underlying facts and circumstances that gave rise to the arrest of Plaintiff-Appellant and therefore was not "acting in concert" with Defendant Deering. Accord State v. Angata, 92 Hawai'i 454, 462-63, 992 P.2d 723, 731-32 (Haw. App. 1999).
[14] Defendant Loui at deposition in evidence on the summary judgment motion testified: "I reviewed the restraining order that was provided along with the police reports ... I checked to make sure that the restraining order was in effect and valid."
[15] In determining whether a defendant is entitled to qualified immunity, the court must consider: "(I) whether a plaintiff has identified a specific right that has been allegedly violated, (2) whether that right was so clearly established as to alert a reasonable official to its parameters, and (3) whether a reasonable official could have believed his or her conduct was lawful." Pahk, at 1269.
[16] Furthermore, inasmuch as the State's appeal was based upon an open question of law, there is no bad faith on the part of the Defendant Prosecutors for arguing against dismissal before the circuit family court judge and/or filing the appeal. Cf. Enoka v. AIG Hawaii Ins. Co., 109 Hawaii 537, 553, 128 P.3d 850, 866 (2006) (noting that AIG's denial of no-fault benefits was based upon an open question of law and therefore could not give rise to the tort of bad faith).
[17] Plaintiff-Appellant does not specifically argue that exhibits must consist of original documents, containing original certifications. This argument would also be unpersuasive. HRE 1003 provides: A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original, or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.
[18] Although some exhibits did not contain the certification page in Defendants' Motion for Summary Judgment, all defects were properly cured in Defendants' Reply to Plaintiff-Appellant's Memorandum in Opposition.